AO 91 (Rev. 5/85) Criminal Complaint

# United States District Court

_____ DISTRICT OF MASSACHUSETTS _____

UNITED STATES OF AMERICA

### V.

TYRONE BATTLE
15 Dunlap Street
First-floor Apartment
Dorchester, MA
      (Name and Address of Defendant)

## CRIMINAL COMPLAINT

CASE NUMBER: *05M - 1043 JGD*

I, the undersigned complainant being duly sworn state the following is true and correct to the best of my knowledge and belief. On or about _____December 20, 2004_____ in _____Suffolk_____ county, in the

_____ District of _____Massachusetts_____ defendant(s) did, (Track Statutory Language of Offense)

having previously been convicted of an offense punishable by a term of imprisonment in excess of one year, knowingly possess, in and affecting commerce, a firearm, to wit: a Bryco Arms 9mm semi-automatic pistol bearing serial number 812439, and one round of .380 caliber ammunition,

in violation of Title _____18_____ United States Code, Section(s) _____922(g)(1)_____

I further state that I am a(n) _____Special Agent, ATF_____ and that this complaint is based on the following
                                  Official Title

facts:

See Attached Affidavit

Continued on the attached sheet and made a part hereof:    ☒ Yes    ☐ No

                                                  _____
                                                  Signature of Complainant

Sworn to before me and subscribed in my presence,

02-17-2005 _____    at    _____Boston, MA_____
Date                                              City and State

JUDITH G. DEIN
UNITED STATES MAGISTRATE JUDGE                     _Judith Gay Dein_
Name & Title of Judicial Officer                               Signature of Judicial Officer

This form was electronically produced by Elite Federal Forms, Inc.

## AFFIDAVIT OF LISA RUDNICKI

I, Lisa Rudnicki, having been duly sworn, on oath depose and state that:

1.      I am a Special Agent with the Bureau of Alcohol, Tobacco,  Firearms and Explosives
("ATF") and have been so employed since February 1996.  In that capacity, I investigate
violations of the federal firearms statutes and have participated in multiple investigations relating
to the unlawful possession of firearms and ammunition.

2.      Based on my training and experience, I am aware that 18 U.S.C. § 922(g)(1) makes it a
federal offense for any individual who has previously been convicted of a felony offense to
possess a firearm or ammunition in or affecting interstate commerce.  Having so stated, I make
this affidavit in support of a complaint charging an individual named TYRONE  BATTLE
("BATTLE") with being a felon in possession of a firearm and ammunition, in violation of 18
U.S.C. § 922(g)(1).

3.      The statements contained in this affidavit are based on my own investigation and on
information provided to me by officers of the Boston Police Department.  This affidavit is
submitted for the limited purpose of establishing probable cause to believe BATTLE violated 18
U.S.C. § 922(g)(1).  It  does not set forth all of the information that I and other law enforcement
personnel have obtained during the course of this investigation.

4.      On December 20, 2004, at approximately 3:30 P.M., Boston Police Officers Thomas
Griffiths, John Puglia, and Daniel Harlow, assigned to the plain clothes anti-crime unit,
responded to 15 Dunlap Street, Dorchester, Massachusetts in response to a 911 call reporting
that a man with a gun was in a hallway at that address threatening to kill a woman.  Upon arrival,
officers observed that the main entrance to the building, a triple-decker style house, was open.
Officers also observed that the entrance to the first-floor apartment was also open and that the

1

doorway appeared to have been forced off its frame.  The officers conducted a protective sweep

of the first-floor apartment and found it to be vacant.  Officers Puglia and Harlow spoke with the

911 caller, Latoya Capers, who resides in the third-floor apartment, and learned that Capers

heard a loud argument between the first floor tenants, later identified as BATTLE and Chadena

Awogboro.  Capers related that during the course of the argument she had heard the woman

screaming, "Help me, help me. He is trying to kill me."  Capers stated that she also  heard the

victim pounding on the second-floor apartment door as she was yelling for help.  Capers

indicated that she did not physically see BATTLE in possession of a firearm, but she heard a

female voice state the word, "gun."

5.      While Officers Puglia and Harlow were speaking with Ms. Capers, Officer Griffiths

responded to the second-floor apartment and spoke with the tenant, Sandra Pringle.  Pringle

initially stated that she was home alone with her children and heard an argument coming from

downstairs but did not want to get involved.  Officer Griffiths advised Pringle that the police

were responding to a call for a man with a firearm.  For the safety of herself and children,

Pringle allowed the officers to check her apartment for any suspects.  During a walk- through of

Pringle's apartment, Officer Griffiths noticed a man's leather jacket on the kitchen chair;

Pringle stated that the jacket belonged to her brother.  Officer Griffiths also observed a black

female, later identified as Awogboro, along with four young children sitting in a rear child's

bedroom (two of the children were Pringle's and two were Awogboro's).  Pringle stated that

Awogboro was her sister-in-law.  When Officer Puglia responded to the second-floor to assist,

he advised Officer Griffiths that he had information that the female victim of the incident to

which they were responding,  Awogboro, was very likely in the second-floor apartment. When

asked what her name was, Awogboro initially lied to the officers and said her name was "Joy."

2

6.      During a protective sweep of the second-floor apartment, officers located BATTLE hiding in a closet in another child's bedroom. BATTLE was removed from the closet by Officers Griffiths, Puglia, and assisting Officer Winston Deleon and then handcuffed for officer safety. BATTLE was advised of his Miranda rights by Sergeant Michael Kern, who had responded to the scene. BATTLE stated that he had an argument with his girlfriend, Awogboro, who had locked him out of their first-floor apartment. BATTLE admitted that he forced the door open in order to retrieve some of his belongings. It was learned that BATTLE had an active warrant for his arrest. BATTLE was then arrested and taken into custody and transported to Area B-3 for processing. Officers then spoke with the woman who had identified herself as "Joy" and learned that she, in fact, was the victim, Chadena Awogboro, who resides in the first-floor apartment with BATTLE and their two small children. Awogboro had obvious scratches to her neck. Awogboro denied that she had been threatened with a gun by BATTLE. Awogboro refused to consent to a search of her first-floor apartment and indicated that she did not wish to cooperate with the police.

7.      Sandra Pringle provided a verbal consent to search her second-floor apartment and she led officers to a bureau in her bedroom where officers recovered a loaded firearm from the top drawer. Pringle advised the officers that prior to their arrival she had observed BATTLE in her bedroom pushing in this same top drawer of her bureau. The firearm was seized by the police and rendered safe. It was found to be loaded with one round of .380 ammunition.

8.      While BATTLE was being processed, he was again advised of his Miranda rights by Officer Puglia and notified of the additional gun charge. BATTLE stated, "It doesn't work."

9.      The recovered firearm proved to be a Bryco Arms, Model Bryco 59, 9mm semi-automatic pistol bearing serial number 812439. At the time of its recovery, the firearm was

3

loaded with one round of .380 caliber ammunition bearing a headstamp of PMC .380 auto. In the condition in which it was found, the firearm was not operable. On January 13, 2005, ATF Special Agent Phillip Ball, a certified interstate nexus examiner, conducted an interstate nexus examination of both the recovered firearm and ammunition and made a determination that neither the gun nor ammunition was manufactured in Massachusetts. Agent Ball additionally determined that, notwithstanding its inoperable condition, the recovered firearm meets the federal definition of a firearm, as it is a weapon that was designed, or may be readily converted, to expel a projectile by the action of an explosive.

10.    On January 19, 2005, I interviewed Latoya Capers, the third-floor tenant at 15 Dunlap Street who placed the 911 call that resulted in BATTLE'S eventual arrest on December 20, 2004. Capers related that on that date she heard a loud fight occurring between her first-floor neighbors, BATTLE and Awogboro. She stated that when she opened her door to investigate, she could hear that the fight was occurring in the hallway between the first and second floor apartments. She heard Awogboro screaming for help, followed by footsteps on the stairs and pounding on the second-floor apartment door as Awogboro continued to call out for help. Capers recalled hearing Awogboro saying something during the fight to the effect, "He's got a gun." Although she never went downstairs and did not see BATTLE with a gun, that statement is what prompted her to call the police.

11.    On January 20, 2005, I interviewed Sandra Pringle, the second-floor tenant at 15 Dunlap Street, in whose apartment BATTLE was arrested on December 20, 2004. Pringle related the following:

      a. On December 20, 2004 she heard a loud argument between BATTLE and Awogboro. That was not unusual. Although Pringle had only lived at 15 Dunlap Street since

4

October 2004, she had previously lived at 133 Marcella Street in Roxbury, Massachusetts, where

BATTLE and Awogboro had also been tenants. So she had known them as neighbors for over a

year. In that time she had frequently heard them argue, and on a number of occasions in the

past Awogboro had sought refuge in her apartment.

      b. When she heard the argument on December 20th, Pringle went out to her

landing and saw BATTLE standing over Awogboro with his hand raised as if her were going to

strike her. Pringle went back into her apartment and then heard Awogboro pounding on her and

yelling, "Let me in, he's going to kill me, he has a gun." Pringle opened the door and let both

Awogboro and BATTLE into her apartment, where they continued their argument for a time. At

some point, BATTLE and Awogboro's two children were brought to Pringle's apartment as

well.

      c. Pringle subsequently saw BATTLE standing in her bedroom, pushing closed

the top drawer of her bureau. When he left the room, she walked over, opened the drawer, and

saw a silver handgun with a black handle. She recognized the gun, which had not been there

previously and was not hers, as one that BATTLE had showed her once when they both had

lived at 133 Marcella Street. Pringle closed the drawer and left her bedroom.

      d. Pringle believed that BATTLE then left her apartment and she was unaware

that he had returned. When the police arrived, Awogboro asked her to lie to the police and to

say that nothing had happened. Pringle initially did so, stating that she had heard the argument

between BATTLE and Awogboro but had not wanted to get involved. She lied as well when the

police saw BATTLE'S jacket on a kitchen chair, telling them that it belonged to her brother.

She also lied when the police found Awogboro, telling them that she was her sister-in-law.

Pringle was surprised when BATTLE was found hiding in the closet of one of her children's

5

bedroom, because she thought that he had left the apartment and not returned. After BATTLE was arrested and Awogboro and her children left Pringle's apartment, Pringle felt free to tell the police the truth. That was when she gave consent to the officers to search her apartment and she led them to the bedroom bureau and showed them the gun that was hidden in the top drawer.

**12.**     On January 25, 2005, I interviewed Chadena Awogboro. The interview took place in the hallway outside her apartment, as she refused to allow me and a fellow agent inside her apartment. Awogboro admitted that she and BATTLE had had an argument on December 20, 2004. She further stated that she had gone upstairs to Sandra Pringle's apartment to use Pringle's telephone to call her father, as she usually calls her father when she is upset. But Awogboro asserted that the argument with BATTLE was "no big deal" and that the Boston Police had blown it out of proportion. She also asserted that BATTLE had not threatened her with a gun, that she had never said the word "gun" during the argument, that she had never seen him with a gun, and that he had not physically threatened her on December 20th or on any prior occasion. Upon being challenged by me as to the validity of those assertions, she terminated the interview.

**13.**     I have reviewed BATTLE's criminal record as maintained by the Massachusetts Criminal History Systems Board. It reveals, among other things, that BATTLE was convicted in 2002 in Dorchester District Court of the offense of distribution of a Class B controlled substance, which offense is punishable by a term of imprisonment in excess of one year.

**14.**     Based on the foregoing, there is probable cause to believe that, on or about December 20, 2004, TYRONE BATTLE, having been previously convicted of a crime punishable by a term of imprisonment exceeding one year, did posses, in and affecting commerce, a firearm and ammunition, in violation of 18 U.S.C. § 922 (g)(1).

6

LISA RUDNICKI
Special Agent, ATF


Sworn and subscribed to before me this seventeenth day of February, 2005.


JUDITH G. DEIN
United States Magistrate Judge

7