UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA        )
                                )
           v.                   )    Criminal No.  05-10053-NMG
                                )
TYRONE B. BATTLE,               )
a/k/a TYERONE BATTLE,           )
                                )
           Defendant.           )

### GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO SUPPRESS EVIDENCE AND STATEMENTS

The United States of America, by and through its attorneys, Michael J. Sullivan, United States Attorney, and Antoinette E.M. Leoney, Assistant U.S. Attorney, submits this memorandum of law in opposition to Defendant Tyrone Battle's ("Battle") Motion to Suppress Evidence and Statements in the above captioned matter.

Battle, through his motion, alleges that (1) the police made a warrantless, illegal entry into the apartment he was visiting and thereafter seized him, (2) he had a reasonable expectation of privacy in the apartment that he was visiting, and (3) the police entry was not supported by probable cause and exigent circumstances. As a result, Battle asserts that all the evidence that flowed from the search and seizure must be suppressed, and further alleges that the statements that he made, subsequent to being advised of his <u>Miranda</u> rights, were tainted by the prior illegal search, a violation of his Fifth Amendment rights and therefore, they must be suppressed as "fruits of the poisonous tree."

As discussed below, Battle's claims are baseless, as they

are unsupported by the facts and the relevant case law.  And, therefore, his motion to suppress should be denied.

FACTUAL SUMMARY[1]

On December 20, 2004, at approximately 3:30 p.m., Boston Police received an emergency 911 call reporting that a light skin black man was in the hallway at 15 Dunlap Street, Dorchester, MA, that the man had a gun, and that the man was saying he was going to kill a female.  (*See* Exhibits A, B; Exhibits K, L filed under seal).  The 911 caller, later identified as LaToya Capers, also stated that she was in the building on the third floor and had only seen the man and female briefly.  (*See* Exhibit A).

When Boston Police Officers Griffiths, Puglia and Harlow, who were the first to respond to the emergency call, arrived at 15 Dunlap Street, a triple-decker house, they observed the main entry way of the dwelling open, and observed the front door of the first floor apartment, Apartment #1, open.  (*See* Exhibit B). The officers also observed that the door to Apartment #1 had been forced open, with the inside of the door jam completely off its

_____

[1]The factual summary is based on police reports, ATF reports, federal grand jury testimony of witnesses, tape recordings and CAD sheet of the 911 call and police dispatch, and the tape recording of the police interview of Battle.  The government anticipates that these facts will be elicited at any suppression hearing, as well as, at trial.  Further, the government has also filed this day under separate cover, federal grand jury transcripts under seal in support of its factual summary.  These transcripts are denoted as Supplemental Exhibits J, K, L.

frame.  (*See* Exhibit B).  The officers made a protective sweep of the apartment, but found the apartment empty.  (*See* Exhibit B).

The evidence is clear that on this date, Battle, Chadena Awogboro and the couple's two small children, resided on the first floor as tenants in Apartment #1.  (*See* Affidavit of Chadena Awogboro in Support of Defendant's Motion to Suppress; *see also* Exhibits C, E, I, and Federal Grand Jury transcripts filed under seal).

After securing Apartment #1, Officers Puglia and Harlow proceeded to the third floor, Apartment #3, and interviewed the residents, Karen Jacobs and LaToya Capers.  (*See* Exhibits B, G; Exhibits K, L filed under seal).  Ms. Capers, who identified herself as the 911 caller, stated that she was the person who had placed the 911 call.  She further stated that she had heard a loud argument that began on the first floor and traveled to the second floor between a male [later identified as Battle] and a female [later identified as Chadena Awogboro], and that the female was banging on the door of Apartment #2 screaming "Debbie, Debbie...help me...help me...he's trying to kill me."  (*See* Exhibits B, G; Exhibit L filed under seal).  Ms. Capers and Ms. Jacobs both advised the officers that the man had a gun or that they heard someone yelling he had a gun.  (*See* Exhibit G; Exhibit K, L filed under seal).

Officer Griffiths responded to the second floor, Apartment

3

#2, and spoke with the tenant, Sandra "Debbie" Pringle. (*See* Exhibit B). When Ms. Pringle opened the door to her apartment, Officer Griffiths asked her whether she had heard the fighting that had taken place downstairs, to which, she replied that she had heard it but that she did not want to get involved.[2] (*See* Exhibit B; Exhibit J filed under seal). The evidence is clear that on this date, Ms. Pringle resided in the apartment with her daughter and grandchildren, and no one else. (*See* Affidavit of Chadena Awogboro in Support of Defendant's Motion to Suppress; *see also* Exhibits J, K, L filed under seal).

After inquiring about whether Ms. Pringle had overheard the fight, Officer Griffiths then asked her for permission to check her apartment for her and her children's safety, to which she consented, stating, "no problem."[3] (*See* Exhibit B; Exhibit J

---

[2]In subsequent questioning, Ms. Pringle stated that she had heard Ms. Awogboro at her apartment door yelling and screaming for help...talking about "help her, help her...he's going to kill her." Ms. Pringle stated that she opened the door because Ms. Awogboro's screams were scaring her son. When Ms. Pringle opened the door, she saw Ms. Awogboro laying on the hallway floor and Battle standing over Ms. Awogboro with his fist raised. Ms. Pringle told Ms. Awogboro and Battle to come inside her apartment so they could talk about it because they were scaring her kids, but the yelling and screaming continued inside the apartment. (*See* Exhibit J filed under seal).

[3]Suffice it to say, contrary to what Battle and Ms. Awogboro would have this Court believe, the police officers did not force their way into Ms. Pringle's apartment, nor did they pressure Ms. Pringle, into letting them check her apartment by telling her that if she failed to let them in they would obtain a search warrant. (*See* Exhibit B; Exhibit J filed under seal).

filed under seal).

While checking the apartment, Officer Griffiths observed a man's black bomber [blue] jacket on a kitchen chair. (*See* Exhibit B). When he asked Ms. Pringle who the jacket belonged to, Ms. Pringle initially stated that it was her brother's jacket. (*See* Exhibit B). Officer Griffith further observed an unknown female, later identified as the victim, Chadena Awogboro, in one of the children's bedroom, with four young children huddled around her. (*See* Exhibit B). Ms. Pringle, when asked who the woman was, initially stated that it was her sister-in-law. (*See* Exhibit B). At this point, Officer Puglia responded downstairs to assist Officer Griffiths and advised that he from his interview of the tenants in Apartment #3, he believed that the victim was possibly in Apartment #2. (*See* Exhibit B). Officer Puglia asked the unknown female [later identified as Chadena Awogboro], who appeared to have scratches on her neck, her name, and she falsely stated that her name was "Joy." (*See* Exhibit B). It is noteworthy that Ms. Awogboro refused to tell the officers anything about the incident, other than to say that Battle did not reside at Apartment #1. (*See* Exhibit B). And, she said nothing to correct the misrepresentation by Ms. Pringle that she was Ms. Pringle's sister-in-law. Ms. Pringle, on the other hand, later advised that she was not initially forthcoming about the bomber jacket and who Ms. Awogboro was, because Ms.

Awogboro had asked her not to say anything to the police because Ms. Awogboro did not want Battle to go to jail, and because Ms. Pringle did not want to speak to the officers in front of Ms. Awogboro. (*See* Federal Grand Jury transcripts filed under seal).

Upon finding Ms. Awogboro and the children in the bedroom, the Police continued to do a protective sweep of Ms. Pringle's apartment. While checking the closet in one of the <u>other</u> bedrooms, Battle was found hiding under a pile of clothes. (*See* Exhibit B; Exhibit J filed under seal). Officers Griffiths, Puglia and Deleon removed Battle from the closet and placed him in handcuffs for officers' safety. (*See* Exhibit B). Battle was immediately read his <u>Miranda</u> rights and asked if he understood them to which he stated "yes." (*See* Exhibit B). Battle was then brought downstairs from the apartment and, the police, following normal police procedures, ran his criminal history record. (*See* Exhibit B). While downstairs, the police questioned Battle as to what happened. He told the officers that his girlfriend, Ms. Awogboro, had locked him out of Apartment #1 and so, he forced the locked door open so that he could receive some of his things that he had packed in a backpack. (*See* Exhibit B). The officers subsequently learned that Battle had an outstanding warrant for his arrest from a prior pending criminal matter. (*See* Exhibits B, I). Battle was immediately placed under arrest and brought to the Area B-3 Police Station for booking, where he was

photographed and advised a second time of his <u>Miranda</u> rights. (*See* Exhibits B, C).  Following his booking, Battle was given his <u>Miranda</u> rights a third time by Detectives Black and Doogan, which he waived orally and in writing.  (*See* Exhibits D, E).  Battle also agreed to a taped interview by Detectives Black and Doogan, wherein he gave a full confession regarding the incident and recovery of the firearm and ammunition.  (*See* Exhibits D, F).

After Battle and Ms. Awogboro had left Ms. Pringle's apartment, Ms. Pringle pulled the officers to the side and told them that she wanted to show them something.  (*See* Exhibit J filed under seal).  She directed the officers to a bureau in her bedroom, where she opened the drawer and showed the officers a fully loaded handgun, which she stated Battle had placed there. (*See* Exhibit J filed under seal).[4]  Detective Josey, then asked Ms. Pringle if she would reaffirm her voluntary oral consent to search her apartment by signing a written consent form, which she did.  (*See* Exhibits B, H).  Once Ms. Pringle had signed the form, the officers photographed the scene and secured the handgun, identified as a Bryco Arms, Model Bryco 59, 9mm semi-automatic pistol, bearing serial number 812439, fully loaded with one round of .380 caliber ammunition.  (*See* Exhibit B).

---

[4]Upon discovery of the firearm in the bureau drawer, Detective Josey, in the presence of Sergeant Kern, asked Ms. Awogboro if the police could search her apartment (Apartment #1). (*See* Exhibit B).  She repeatedly replied "no" and the officers did not search her apartment.

As evidenced by the tape recorded statement given by Battle to Detectives Black and Doogan, Battled admitted that he had hid in Ms. Pringle's bedroom closet because he knew that the police were outside of her apartment.  In addition, he stated that the loaded firearm in Ms. Pringle's bureau was his.  Moreover, Battle correctly identified the gun by giving its color, make and the number of bullets in the magazine.  Battle also stated the location where he hid the gun, which matched the location in the bureau drawer, where Ms. Pringle directed the police's attention.  Battle further stated words to the effect that he had hid the gun in Ms. Pringle's apartment because he did not want it in his apartment, as he anticipated a police response to the victim getting loud from their argument.  Finally, Battle told the police that he had stolen the gun from an individual named "Blake" and that he had that particular gun for about a year.

ARGUMENT

The evidence seized from 15 Dunlap Street, Apartment #2, on December 20, 2004, by Boston Police officers responding to an emergency 911 call regarding a man with a gun and threatening to kill a female, and the subsequent statements made by Battle, should not be suppressed because the police lawfully entered the apartment and were given voluntary consent [both oral and written] to conduct a protective sweep and search of the home by the tenant, Sandra "Debbie" Pringle.  And, further, Battle does

8

not have legal standing, and thus no reasonable expectation of
privacy in Ms. Pringle's apartment, to make such a challenge on
the facts of this case.

I.    BATTLE DOES NOT HAVE STANDING TO CHALLENGE THE CONSENSUAL
      SEARCH AND SUBSEQUENT SEIZURE OF EVIDENCE BY POLICE FROM MS.
      PRINGLE'S APARTMENT, WHERE HE HAD NO REASONABLE EXPECTATION OF
      PRIVACY.

      As a preliminary matter, before examining the merits of
Battle's suppression challenge, Battle must show that he had a
reasonable expectation of privacy in the area searched and in
relation to the items seized. United States v. Salvucci, 448 U.S.
83, 90-92 (1980). In order to prove a Fourth Amendment violation,
a defendant must demonstrate not only that he exhibited a
subjective expectation of privacy, but also that his expectation
was justifiable under the attendant circumstances. See United
States v. Aguirre, 839 F.2d 854, 857 (1st Cir. 1988)(citing
Salvucci, 448 U.S. at 90-91); See Rakas v. Illinois, 439 U.S. 128
(1979). If a defendant fails to demonstrate a legitimate
expectation of privacy in the area searched or the item seized, he
will not have standing to claim that an illegal search or seizure
occurred. United States v. Mancini 8 F.3d 104, 107 (1st Cir. 1993).
Standing to challenge a search and seizure does not automatically
devolve upon every accused individual, rather, it is personal to
each defendant. Salvucci, 448 U.S. at 90-91. Therefore, Battle
must cross the "standing threshold" before the legality of the
search and seizure is placed legitimately into issue. Aguirre, 839

9

F.2d at 856.

A reasonable expectation of privacy necessary to establish standing for a defendant to challenge a search and seizure is determined by several relevant factors.  United States v. Gomez, 770 F.2d 251, 254 (1st Cir. 1985).  Those factors are "possession or ownership of the area searched or items seized; prior use of the area searched or property seized; legitimate presence in the area searched; and ability to control or exclude others' use of the property..."  Id.  These factors are employed to determine "whether or not the individual's expectation of confidentiality was justifiable under the attendant circumstances."  Aguirre, 839 F.2d at 857.

This being said, there are certain circumstances where a defendant may have a legitimate expectation of privacy in another's house.  Minnesota v. Olson, 495 U.S. 91 (1990)(overnight guest has a legitimate expectation of privacy).  However, just because an individual is legitimately in the home of another does not automatically mean that the person has standing to challenge the legality of a search and seizure.  Minnesota v. Carter, 525 U.S. 83, 90 (1998)(an overnight guest in a home may claim the protection of the Fourth Amendment, but one who is merely present *with the consent* of the householder may not).  Guests in another's home must demonstrate that they have a meaningful connection to the residence, in order to assert the protection of the Fourth

10

Amendment.  <u>United States v. Rhiger</u>, 315 F.3d 1283, 1286 (10th Cir. 2003).  For instance, where a guest has permission to use an apartment, is given a key, and uses the apartment in the owner's absence, society may be prepared to recognize the guest's privacy, even though no property interest exists.  <u>United States v. Fields</u>, 113 F.3d 313, 321 (2nd Cir. 1997).  Additionally, it is well settled that a casual visitor has no expectation of privacy in another's home and is therefore not afforded the protection of the Fourth Amendment.  <u>United States v. Torres</u>, 162 F.3d 6, 10 ( 1st Cir. 1998).  However, a guest, who is not staying overnight, may have a legitimate expectation of privacy if that guest is making an extended visit to the premises.  <u>Fields</u>, 113 F.3d at 321.

Here, the evidence unambiguously suggests that Battle did not have an objectively reasonable expectation of privacy in Ms. Pringle's apartment and thereby, has no standing to challenge the search of the premises.  Notably, Battle has offered no evidence that would fulfill any of the <u>Aguirre</u> factors necessary for a finding of a reasonable expectation of privacy.  There is no indication that Battle ever resided [or was an overnight guest] at 15 Dunlap Street, Apartment #2, or in any way had possession of the premises.  Moreover, there is no evidence that Battle ever used, had control of, or direct access to that apartment.  Likewise, Battle has no reasonable expectation in the recovered handgun because he stashed it in Ms. Pringle's apartment among her personal

11

belongings.   Furthermore, Battle certainly cannot be deemed to be a social guest in this context or in any other [that is, in the true sense of the term].   Indeed, a social guest is not someone who, like Battle, is invited into another's apartment because the host feels compelled to stop a fight between the social guest and his girlfriend, during which the girlfriend is pounding on the host's door and screaming for help because the social guest is trying to kill her.   Furthermore, Battle did not possess the requisite "meaningful connection" as a guest in the apartment to establish a reasonable expectation of privacy. <u>Rhiger</u>, 315 F.3d at 1286.  Though Battle was friendly with Ms. Pringle, there is absolutely no evidence that he met the requirements discussed in the <u>Rhiger</u> case.   For instance, he had never spent the night in Ms. Pringle's apartment, nor kept any of his personal items there or had any access to it without Ms. Pringle being present. Moreover, Battle's visit to Ms. Pringle's apartment was not an extended visit, as discussed in the <u>Fields</u> case.  He was only in the apartment for a short period of time before the police arrived and there is no evidence that he was planning to stay there for a long time.   Since Battle did not have a meaningful connection to Apartment #2 and was not a guest, who was staying over night or for an extended visit, he did not have a reasonable expectation of privacy and thereby has no standing to challenge the search.

Though Battle, along with Ms. Awogboro, was invited into the

apartment by Ms. Pringle, he is not a guest that should be afforded a reasonable expectation of privacy in her apartment.   As in the Carter case, Ms. Pringle's mere consent to the presence of Battle in her apartment does not give him the protection of the Fourth Amendment as a guest.   Battle may technically have been invited into the apartment but, Ms. Pringle was only bringing him and the victim in because she could not allow the victim's screams for help to go unanswered.   Therefore, Battle, like the defendant in Torres, was nothing more than a casual visitor to the apartment and as such had no expectation of privacy in the apartment.   Torres, 162 F.3d at 10 (defendant found to be a casual visitor because he did not have a sufficient residential interest in the property that was not his abode).   Clearly, the facts and case law evince that Battle does not have standing to challenge the search by police, as he was not a social guest with reasonable expectation of privacy in the apartment.

Since Battle has failed to provide any evidence that he had an expectation of privacy in the area searched or the gun that was seized, he has not crossed the "standing threshold" and thereby has no standing to contest the protective sweep and the search of Ms. Pringle's apartment on December 20, 2004.

II.   THE WARRANTLESS ENTRY AND SEARCH OF APARTMENT # 2 AT 15 DUNLAP STREET WAS LEGAL, AS IT WAS CONDUCTED AS A PROTECTIVE SWEEP BASED ON THE VOLUNTARY CONSENT OF THE LESSEE, SANDRA "DEBBIE" PRINGLE.

A.   Voluntary oral and written consent was given to the
     officers by Sandra "Debbie" Pringle to conduct a search
     of her apartment.

Even if, arguably, this Court finds that Battle has legal

standing to challenge the search of Apartment #2, his challenge

must surely fail because valid consent was given by the lessee,

Sandra "Debbie" Pringle.

Consent is one of the well-delineated exceptions to the

Fourth Amendment requirements of both a warrant and probable

cause.  Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973);

United States v. Melendez, 301 F.3d 27, 32 (1st Cir 2002).  The

Fourth Amendment prohibits the warrantless entry of a person's

home, however that prohibition does not apply where voluntary

consent has been obtained from an individual whose property is

searched or from a third party that possesses common authority

over the premises.  Illinois v. Rodriguez, 497 U.S. 177, 181

(1990); See Schneckloth, 412 U.S. 218; See also United States v.

Torres, 188 F. Supp.2d 155, 157-58 (D.P.R. 2002).  Additionally,

the consent of the individual who possesses common authority over

a premises will be valid against the person with whom that

authority is shared.  United States v. Marshall, 348 F.3d 281,

284 (1st Cir. 2003)(quoting United States v. Matlock, 415 U.S.

164, 170 (1974)).  However, common authority to contest or

consent to a search is not based on a property interest but

rather on "mutual use of the property by persons having joint

access or control" of the premises.  See  Matlock, 415 U.S. at
172.

When consent is relied on to justify the lawfulness of a
search of an individual's property, the government has the burden
of proving that the consent was given freely and voluntarily.
Id. at 222; See Bumper v. North Carolina, 391 U.S. 543, 548
(1968).  To determine the voluntariness of the consent, courts
consider the totality of the circumstances surrounding the
consent.  Schneckloth, 412 U.S. at 226.  The factors employed in
conducting this inquiry are the individual's age, intelligence,
education, language ability and knowledge of the constitutional
right to refuse consent.  Id.  An additional factor in
determining voluntariness of the consent is the degree to which
the individual cooperates with the police.  Id.  Consent cannot
be given pursuant to an unfounded show of authority by police
but, the fact that the police state that they will seek a warrant
does not render the consent invalid.  United States v. Maldonado
Garcia, 655 F.Supp. 1363, 1368 (D.P.R. 1987).

In the instant case, Battle has no standing to challenge the
search but, assuming for argument sake that he has standing, the
police search of the apartment is lawful because Ms. Pringle
voluntarily consented to it.  There is no evidence that Battle
ever had access to or control over the Ms. Pringle's apartment,
therefore, Battle had no common authority over the apartment and

15

no ability to contest the search.  Since Ms. Pringle, as the
lessee, possessed the authority to consent to the search of the
apartment, her consent was valid against Battle, who had no
reasonable expectation of privacy in or common authority over the
premises.  Furthermore, the police, while reporting to the 911
call, obtained Ms. Pringle's oral and written voluntary consent
to conduct a search of her apartment for her safety and that of
her children.  No coercion or threat of force was employed by the
police to elicit Ms. Pringle's consent and, there is no evidence
that Ms. Pringle lacked the intelligence, education, or language
ability to comprehend the situation.  In addition, Ms. Pringle
not only consented to the search but, cooperated with the police
by showing them where Battle had hid the gun in her bureau.  As
discussed in <u>Schneckloth</u>, Ms. Pringle's cooperation demonstrates
the voluntariness of her consent to the police search.

     While it is true that Ms. Pringle was not at first
forthcoming about either Battle's jacket, his presence in the
apartment or the victim's true name and status, the victim had
implored her not to say anything to the police about the fight or
Battle's presence in the apartment, and she did not want to speak
in front the victim.  However, Ms. Pringle consented to the
protective sweep and search, and once Battle and Ms. Awogboro
left the apartment, she directed the police to the gun.  Although
the police entered and searched Ms. Pringle's apartment without a

16

warrant or probable cause, the facts make clear that their conduct was lawful because Ms. Pringle voluntarily consented to the search for the safety of herself and the children, which as stated above is a clear exception to the Fourth Amendment requirements. <u>Rodriquez</u>, 497 U.S. at 181.

Battle suggests that Ms. Pringle's consent was a "mere acquiescence to the show of police authority" and that the police tricked Ms. Pringle into consenting by stating that they would obtain a search warrant. Battle, however, has offered no hard evidence to support his claim. Indeed, the record indicates just the opposite. *(See* Exhibits B, H; Exhibit J filed under seal).

That being said, in her supporting affidavit, Ms. Awogboro stated that she heard a confrontation between the police and Ms. Pringle and that it sounded as if the police forced their way into the apartment. The facts of this case, however, directly contradict the her affidavit. Indeed, Ms. Awogboro was in no position to hear or see the conversation between the police and Ms. Pringle, as she was in a bedroom at the opposite end of the apartment. Furthermore, the police report prepared by Officer Griffith indicates that the police asked Ms. Awogboro, more than once if they could search her apartment, but on each occasion she said "no." While this makes clear that the officers respected Ms. Awogboro's Fourth Amendment rights in her apartment, it also demonstrates that if Ms. Pringle had not given her consent to the

officers, they would not have searched the premises without a search warrant.  Thus, it is evident in every respect that Ms. Pringle voluntarily cooperated with the police and consented to the search of her apartment.

Finally, Battle suggests that the consent to search form signed by Ms. Pringle is invalid because it was signed after the search.  This claim by Battle is also unfounded.  The evidence clearly indicates that Ms. Pringle gave her oral consent to the officer's search of her apartment and, that she reaffirmed that consent by signing a consent form.  The fact that Ms. Pringle signed the form after she had given her oral consent does not invalidate the search.  See United States v. Bunnell, 280 F.3d 46, 49 (1st Cir. 2002)(oral invitation to search made at an apartment even before the consent form was tendered).  Because Ms. Pringle consented orally to the search, she had time to think about the decision and had more than one opportunity to deny or revoke the police access to her apartment before she signed the form.  Thus, her signing the form after she consented to the search corroborates the fact that Ms. Pringle voluntarily consented to the police search of her apartment.

> B.  The Search of the Apartment Was a Consensual Search Conducted as a Protective Sweep.

A protective sweep is a quick and limited search of an area, which allows a visual inspection of those places where a person might be hiding.  See United States v. Weems, 322 F.3d 18, 21 (1st

Cir. 2003). Once police are lawfully on a premises with consent, they are authorized to conduct a protective sweep of the area to ensure their safety and the safety of others. <u>United States v. Martins</u>, No. 04-1474, 2005 WL 1502939 (1st Cir. June 27, 2005); <u>see also United States v. Garcia</u>, 997 F.2d 1273, 1282 (9th Cir. 1993); <u>United States v. Patrick</u>, 959 F.2d 991, 996 (D.C. Cir. 1992).

Once again assuming *arguendo* that Battle has standing, the search of Ms. Pringle's apartment as a protective sweep was valid because the police lawfully entered with consent. The police were responding to a dangerous situation at 15 Dunlap Street, as a 911 call indicated that there was a male with a gun threatening to kill a female, thus, the safety of the officers and the people in the building was potentially in jeopardy. As a result, Officer Griffith secured the oral consent of Ms. Pringle to search the apartment, and undertook the protective sweep to ensure that no one was hiding in the apartment from where they could pose a threat to either the police or the individuals in the apartment.

In conducting the search, the police officers' actions, as in the <u>Weems</u> case, were not invasive and they limited their sweep to areas where someone could be hiding, such as the bedrooms and the closets. Upon opening the closet door in one of the bedrooms, Officer Griffith saw Battle hiding under a pile of clothes and with the help of other officers removed him from the closet. Again, as in <u>Weems</u>, the facts of the instant case indicate that

19

the police did not overstep their authority in conducting the search. Ms. Pringle had consented to the search, so the police were in the apartment lawfully, and once legally inside, the police are permitted to conduct a protective sweep for their safety or the safety of others, which they did. <u>Garcia</u>, 997 F.2d at 1282 (a protective sweep permitted when police lawfully present in a home by consent); <u>See also</u> <u>Patrick</u>, 959 F.2d at 996 (police lawfully on the premises with consent were authorized to conduct a protective sweep). Clearly, on the facts here, and the relevant case law, the protective sweep was lawfully conducted pursuant to Ms. Pringle's voluntary consent, therefore, Battle has no basis to challenge the legality of the protective sweep or search.

On July 15, 2005, Battle filed Supplemental Memorandum of Law in Support of a Motion to Suppress by which, he attempts to distinguish <u>United States v. Martin</u>, 2005 WL 1502939 (1st Cir. June 27, 2005), from the case at bar. In said supplemental memorandum, he claims that this is not a case of exigent circumstances, to justify the emergency aid doctrine, and so, the police could not lawfully have entered Ms. Pringle's apartment. While it could be argued that a report of a man with a gun could be an exigent circumstance for police, it is not necessary to raise this issue because in the instant case, Ms. Pringle voluntarily gave the police her oral and written consent to search her apartment. As has been stated, voluntary consent, such as given by Ms. Pringle,

is the clear exception to the requirements of a warrant or probable cause for the Fourth Amendment.  See Schneckloth, 412 U.S. at 219.  Thus, the discussion of the exigent circumstances in said memorandum is not relevant to the case at bar.

In addition, Battle's supplemental memorandum goes further stating that Martins is distinguishable with regard to its discussion of protective sweeps that are made after police are lawfully on a premises.  This argument is also unfounded.  Martins specifically cites both the Patrick and Garcia cases, which state that police are authorized to conduct a protective sweep when lawfully on the premises with consent.  Martins stands for the principle that once police are lawfully on the premises they are allowed to conduct a protective sweep of that premises.  As has been established, voluntary consent to search an apartment by the tenant or someone with common authority is a valid exception to the Fourth Amendment requirements of a warrant or probable cause. Rodriquez, 497 U.S. at 181.  Thus, the police in the instant case were lawfully on the premises, as they had Ms. Pringle's voluntary consent, thus, they were entitled to conduct a protective sweep of the premises for their own safety, as well as, the safety of the other individuals in the apartment. Thus, the Martins case is applicable, with regards to the protective sweep, and Battle's attempt to distinguish it from the instant case is off the mark.

III. BATTLE'S STATEMENTS WERE NOT TAINTED BY AN ILLEGAL SEARCH THEREFORE, THEY SHOULD NOT BE SUPPRESSED AS "FRUITS OF THE POISONOUS TREE."

Evidence is excluded when it is obtained as a direct result of an illegal search or seizure, or if, later discovered and found to be derivative of an illegality or "fruit of a poisonous tree." Segura v. United States, 468 U.S. 796, 804 (1984); See Wong Sun v. United States, 371 U.S. 471, 484 (1963).

In the instant case, there is no illegal search and seizure. As has been stated, the police conducted their search pursuant to the consent of Ms. Pringle and thus, there entry and search was lawful.  As a result, there is no illegal activity by the police that could render Battle's statements the "fruit of the poisonous tree."  Battle cites to United States v. Thomas, 190 F.Supp.2d 49, 64 (D.Me 2002), asserting that the statement given to police should be suppressed as the "fruit of the poisonous tree" because the discovery of the firearm, which was the "but for" cause of his arrest, was illegal.  This claim is unfounded because, as discussed above, the firearm and ammunition was discovered pursuant to a lawful search with the consent of the tenant of the apartment, who on her own accord brought the firearm to the attention of the police officers.  Contrary to what Battle would have us believe, the search here did not entail the officers looking into bureaus, cupboards, drawers and cabinets.  Therefore, any statements made by Battle to the police should not be

22

suppressed as "fruit of the poisonous tree" because the police conduct was lawful and not a violation of Battle's Fourth Amendment rights.

<u>CONCLUSION</u>

WHEREFORE, for the aforementioned reasons the government respectfully requests that this Court deny the Defendant's Motion to Suppress Evidence and Statements.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

By:  <u>/s/Antoinette E.M. Leoney</u>
ANTOINETTE E.M. LEONEY
Assistant U.S. Attorney
1 Courthouse Way, Suite 9200
Boston, MA 02210
Dated: August 1, 2005          (617) 748-3103

<u>CERTIFICATE OF SERVICE</u>

Suffolk, ss.                    Boston, Massachusetts
                                August 1, 2005

I, Antoinette E.M. Leoney, Assistant U.S. Attorney, certify that I caused a copy of the foregoing to be served by electronic notice to Mark W. Shea, Esq., Shea, LaRocque & Wood, LLP, 47 Third Street, Suite 201, Cambridge, MA 02141-1265, the counsel of record.

<u>/s/Antoinette E.M. Leoney</u>

# EXHIBIT A

Incident History for: #PD040684864

```
Received     12/20/04  15:30:00  BY PCT15  94133
Entered      12/20/04  15:31:28  BY PCT15  94133
Dispatched   12/20/04  15:32:37  BY PDT01  12226
Enroute      12/20/04  15:32:37
Onscene      12/20/04  15:36:12
Closed       12/20/04  17:02:15
```

Initial Type: PERGUN      Final Type: PERGUN (PERSON WITH GUN)
Initial Priority: 1       Final Priority: 1
Disposition: RPT     Source: 9    Primary Unit: CK01D
Police BLK: 0345000   Fire BLK: 3314   EMS BLK: 0923201
Group: 03      Beat: 1     Map Page: 1113
Loc: 15 DUNLAP ST ,DO btwn WASHINGTON ST & WHITFIELD ST (V)
Loc Info: APT 1
Name: CINGULAR WRLS 866 915 5 Addr: 2100 DORCHESTER AV      Phone: 6178406172

/153128  (94133 )  ENTRY            CLR STS A MALE IS IN THE HALLWAY AT ABV; STS H
                                    E HAD A GUN AND HE'S SAYING HE'S GOING TO KILL
                                    A FEMALE; CLR HUNG UP; CALLING BACK.
/153237  (12226 )  DISPER  CK01D    #11385  PUGLIA, JOHN
                                    #10957  GRIFFITHS, THOMAS
                                    #12020  HARLOW, DANIEL
/153238  (94133 )  SUPP             TXT: CLR STS SHE'S ON THE 3RD FLOOR; STS SHE J
                                    UST SAW THEM BRIEFLY; COULD ONLY TELL ME HE'S
                                    A LT SKIN BLK MAN.
/153328            SUPP             TXT: CLR STS HE JUST LEFT THE BUILDING; STS HE
                                    'S WENT INTO THE HOUSE NEXT DOOR ; STS SHE CAN
                                    'T TELL ME ANYTHING ELSE; NFI.
/153612  (11385 )  *ONSCNE  CK01D
/153935  (12226 )  ASSTER  C908     [15 DUNLAP ST ,DO]
                                    #11620  KERN, MICHAEL V
/154009            ASSTER  C426D    [15 DUNLAP ST ,DO]
                                    #10414  ESPINOLA, TAMARA
/154009            $ASSTER C431D    [15 DUNLAP ST ,DO]
                                    #6851   COWART JR, JAMES
/154241            ASSTER  T526     [15 DUNLAP ST ,DO]
                                    #9390   WILLIAMS, ANDRE
/154331            ASSTER  C103D    [15 DUNLAP ST ,DO]
                                    #91884  DELEON, WINSTON
                                    #10730  MORRIS JR, CLARENCE
/154331            $ASSTER C101D    [15 DUNLAP ST ,DO]
                                    #91894  HENRIQUEZ, ISMAEL
                                    #11743  TAXTER, LUCAS E
/154517            ONSCNE  C908
/155738            ONSCNE  T526                           **069**
/160111  (91884 )  *QPERS  C103D    T/C103D
                                    ,NAME:BATTLE,TYRONE              DOB:091
                                    980   SEX:M   RAC:B   SOC:       OLN:
                                                    STATE:MA   REF#:
```

```
                                        NIC#:
/160147                           , NAME:                                           DOB:
                                        SEX:      RAC:      SOC:                     OLN:
                                                           STATE:MA   REF#:W6456308
                                        NIC#:
/160232              *QPERS    C103D   T/C103D
                                      , NAME:AWOGOBORO, SHADINA                      DOB:010
                                        182    SEX:F    RAC:B    SOC:                OLN:
                                                           STATE:MA   REF#:
                                        NIC#:
/160414   (12226 )   ASSTOS    C202D   [15 DUNLAP ST , DO]
                                        #11898   DOTTIN-JORDAN, SHARON
                                        #11532   YOUNGER, ATIYA
/160421              TRANS     C202D   [DIST 3]
/161045   (90272 )   ASSTER    C411F   [15 DUNLAP ST , DO]
                                        #91908   MEDINA, DENNIS
/162001              ASSTER    C811    [15 DUNLAP ST , DO]
                                        #9292   JOSEY, WINDELL
/162605              ONSCNE    C411F
/162659              CLEAR     C101D
/162842              $PREMPT   C411F
/163547              ONSCNE    C811
/164410              CLEAR     T526
/164701              $PREMPT   C426D
/165003              CLEAR     C908
/165511              CLEAR     C202D
/165706   (93651 )   CONTCT    CK01D   Contact in 200 Minutes
                                      , L20 RPT
/165711              CLEAR     C811
/165716              CLEAR     C431D
/165927              CLEAR     C103D
/170215              CLEAR     CK01D   DSP: RPT     - REPORT
/170215              CLOSE     CK01D
```

**070**

# EXHIBIT B

# BOSTON POLICE
# INCIDENT REPORT

ORIGINAL ☒    SUPPLEMENTARY ☐

| KEY SITUATIONS | | | COMPLAINT NO | | REPORT DIST | CLEARANCE DIST |
|---|---|---|---|---|---|---|
| DOMESTIC VIOLENCE | | | 040684864 | | B3 | |
| TYPE OF INCIDENT | CRIME CODE | | STATUS | DATE OF OCCUR | | B. |
| 209A, FELONY ASSAULT | 0 | | | A.12/20/04 | | |
| LOCATION OF INCIDENT | | APT | DISPATCH TIME | TIME OF OCCUR | | B. |
| 15 DUNLAP ST | | # 2 | 03:32 PM | A.03:30 PM | | |

| VICTIM-COMP. (LAST, FIRST, MI) | PHONE | SEX | RACE | | MARITAL STATUS |
|---|---|---|---|---|---|
| AWOGBORO,CHADENA | (617)-427-7897 | FEMALE | BLACK NON-HISPANIC | | |
| ADDRESS | APT | OCCUPATION | | AGE | D.O.B. |
| 12 DUNLAP ST,DORCHESTER,MA,00000-0000 | # 2 | | | 22 | 3/7/1982 |

| PERSON REPORTING | ADDRESS | APT. | PHONE |
|---|---|---|---|
| P.O. GRIFFITHS | 1165 BLUE HILL AVE,MATTAPAN,MA,02124-0000 | | (617)-343-4700 |
| P.O. PUGLIA | 1165 BLUE HILL AVE,MATTAPAN,MA, | | |
| P.O. HARLOW | 1165 BLUE HILL AVE,MATTAPAN,MA, | | (617)-343-4700 |
| SGT. KERN | 1165 BLUE HILL AVE,MATTAPAN,MA, | | |

WAS THERE A WITNESS TO THE CRIME    A ☒ YES ☐ NO

| PERSON INTERVIEWED | AGE | LOCATION OF INTERVIEW | APT. | HOME ADDRESS | APT. | TELEPHONE |
|---|---|---|---|---|---|---|
| KNOWN TO COMM. | 0 | ON-SCENE | | | | RES BUS |

NUMBER OF PERPETRATORS : 1 --- CAN SUSPECT BE IDENTIFIED AT THIS TIME    B ☒ YES ☐ NO

**PERSON**

| STATUS | NAME (LAST, FIRST, MI) | | | S.S. NO. | BOOKING NO. | PHOTO NO. | ALIAS |
|---|---|---|---|---|---|---|---|
| ARRESTED | BATTLE,TYRONE | | | 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 | 20040282403 | | |
| WARRANT NO. | ADDRESS | | SEX | RACE | | AGE | HEIGHT DOB |
| | 15 DUNLAP ST,DORCHESTER,MA,02124-0000 | | MALE | BLACK NON-HISPANIC | | 24 | 6-00 9/19/1980 |
| SPECIAL CHARACTERISTICS(INCLUDING CLOTHING) | | WEIGHT | BUILD | HAIR | | EYES | |
| GREY SWEATER, BLUE JEANS, BROWN AND BLUE BOOTS | | 210 | SLIM | BLACK | | BROWN | |

CAN SUSPECT VEHICLE BE DESCRIBED    C ☐ YES ☒ NO

**VEHICLE**

| STATUS | | REG. STATE | REG. NO. | PLATE TYPE | YEAR(EXP) | MODEL |
|---|---|---|---|---|---|---|
| VEHICLE MAKE YEAR | | VEHICLE NO. | | STYLE | COLOR(TOP-BOTTOM) | |
| OPERATOR'S NAME | | | LICENSE NO. | STATE | OPERATOR'S ADDRESS | |
| OWNERS'S NAME | | | OWNERS'S ADDRESS | | | |

CAN PROPERTY BE IDENTIFIED    D ☒ YES ☐ NO

**PROPERTY**

| STATUS | TYPE OF PROPERTY | SERIAL OR I-DENTI-GUARD NO. | BRAND NAME-DESCRIPTION | MODEL | VALUE | UCR |
|---|---|---|---|---|---|---|
| RECOVERED | FIREARMS | 812439 | BRYCO 59 - JENNINGS FIREARM - 9MM | | | |
| RECOVERED | COAT | | - BLUE BOMBER JACKET | | | |
| RECOVERED | AMMUNITION | | - (ONE) .380 CALIBER ROUND | | | |

IS THERE A SIGNIFICANT M.O.    E ☒ YES ☐ NO

**MO**

| TYPE OF WEAPON-TOOL | NEIGHBORHOOD | TYPE OF BUILDING | PLACE OF ENTRY |
|---|---|---|---|
| HANDGUN | RESIDENCE/HOME | RESIDENTIAL APT | FRONT DOOR |
| WEATHER | LIGHTING | TRANSPORTATION OF SUSPECT | VICTIM'S ACTIVITY |
| SNOWING | NATURAL | FOOT | AT HOME |
| UNUSUAL ACTIONS AND STATEMENTS OF PERPETRATOR | | RELATIONSHIP TO VICTIM | |
| " | | GIRLFRIEND | |

IS THERE ANY PHYSICAL EVIDENCE (DESCRIPTION AND DISPOSITION IN NARRATIVE)    F ☒ YES ☐ NO

IS THERE ANY OTHER REASON FOR INVESTIGATION (REASON BELOW)    G ☒ YES ☐ NO

BLOCK NO.

NARRATIVE AND ADDITIONAL INFORMATION

ABOUT 3:30 PM PO'S GRIFFITHS, PUGLIA AND HARLOW ASSIGNED AS THE CK01D PLAIN CLOTHES ANTI-CRIME UNIT ON TODAY'S DATE 12/20/2004, RESPONDED TO 15 DUNLAP ST FOR A REPORT OF A MALE IN THE HALLWAY WITH A GUN AND A WOMEN SCREAMING. UPON ARRIVAL, PO'S OBSERVED THE MAIN ENTRYWAY OF THE DWELLING OPEN. PO'S ALSO OBSERVED FRONT DOOR OF APARTMENT # 1 ALSO OPENED. THE DOOR TO APT. # 1 APPEARED TO HAVE BEEN FORCED OPEN. PO'S OBSERVED THE INSIDE OF THE DOOR JAM TO BE COMPLETELY FORCED OFF OF THE FRAME. PO'S GRIFFITHS, PUGLIA AND HARLOW THEN ENTERED THE APARTMENT TO CONDUCT A PROTECTIVE SWEEP. PO'S COULD NOT FIND ANY VICTIM OR SUSPECT INSIDE OF THE UNIT. PO'S HARLOW AND PUGLIA THEN SPOKE WITH THE CALLER LATOYA CAPERS WHO STATED SHE HEARD A LOUD ARGUMENT BETWEEN A MALE AND FEMALE. MS CAPERS FURTHER STATED THAT THE FEMALE WAS SCREAMING "HELP ME...HELP ME...HE IS TRYING TO KILL ME." P.O. GRIFFITHS RESPONDED TO APARTMENT # 2 AND SPOKE WITH TENANT SANDRA PRINGLE (DOB- ███████). OFFICERS ASKED MS. PRINGLE IF ANYONE WAS IN THE APARTMENT WITH HER AND SHE STATED "JUST ME AND MY KIDS." PO'S ASKED MS. PRINGLE IF SHE HEARD ANY FIGHTING DOWNSTAIRS AND SHE STATED SHE

**003**

HEARD AN ARGUMENT BUT DID NOT WANT TO GET INVOLVED. P.O. GRIFFITHS ASKED IF HE COULD CHECK THE APARTMENT FOR HER AND HER CHILDREN'S SAFETY AND SHE STATED "NO PROBLEM." WHILE CHECKING THE APARTMENT P.O. GRIFFITHS OBSERVED A BLACK BOMBERS JACKET ON KITCHEN CHAIR. WHEN ASKED WHO THE JACKET BELONGED TO MS. PRINGLE STATED "THAT'S MY BROTHERS". MS. PRINGLE ALLOWED PO'S TO ENTER THE APARTMENT AND WHILE INSIDE PO GRIFFITHS OBSERVED A BLACK FEMALE IN THE CHILDS BEDROOM WITH FOUR YOUNG CHILDREN AROUND HER. WHILE SPEAKING WITH MS. PRINGLE SHE STATED THAT THE FEMALE WAS HER SISTER IN-LAW. PO PUGLIA RESPONDED DOWNSTAIRS TO ASSIST PO GRIFFITHS AT WHICH TIME PO PUGLIA HAD INFORMATION THAT VICTIM WAS POSSIBLY INSIDE OF APARTMENT# 2. PO PUGLIA ASKED THE UNKNOWN FEMALE (LATER I.D.'ED AS CHADENA AWOGBORO) WHAT HER NAME WAS AND SHE PAUSED AND THEN STATED " JOY ". WHILE CONDUCTING A PROTECTIVE SWEEP P.O. GRIFFITHS CHECKED THE CHILDS BEDROOM CLOSET AND OBSERVED SUSPECT HIDING INSIDE OF THE CLOSET IN A PILE OF CLOTHES. OFFICERS GRIFFITHS, PUGLIA AND DELEON REMOVED THE SUSPECT FROM THE CLOSET AND PLACED HIM IN HANDCUFFS FOR PO'S SAFETY. THE SUSPECT WAS IMMEDIATELY INFORMED OF HIS MIRANDA RIGHTS BY SGT KERN AND ASKED IF HE UNDERSTOOD HIS RIGHTS TO WHICH HE REPLIED "YES." SGT KERN NEXT ASKED THE SUSPECT WHAT HAD HAPPENED AND HE STATED THAT THE VICTIM WHO IS HIS GIRLFRIEND HAD LOCKED HIM OUT OF THE APARTMENT. THE SUSPECT THEN STATED THAT HE FORCED THE DOOR OPEN IN ORDER TO RETRIEVE SOME OF HIS BELONGINGS WHICH HE HAD PACKED INSIDE OF A BACKPACK. IT WAS THEN DISCOVERED THAT THE SUSPECT HAS AN ACTIVE WARRANT (0302CR005211) FOR HIS ARREST. THE SUSPECT WAS PLACED UNDER ARREST AND TRANSPORTED TO B-3 FOR BOOKING BY THE C202D. PO'S THEN SPOKE WITH MS. AWOGBORO WHO STATED THAT SHE WAS INDEED THE VICTIM AND IT WAS AN ARGUMENT BUT NO BIG DEAL. VICTIM APPEARED TO HAVE SCRATCHES TO HER NECK BUT WOULD NOT PROVIDE ANY FURTHER INFORMATION REGARDING THE INCIDENT. AT THIS TIME MS PRINGLE GAVE OFFICERS CONSENT TO SEARCH APARTMENT TWO. A FIREARM WAS RECOVERED FROM A ROOM INSIDE APARTMENT TWO WHICH THE SUSPECT HAD PREVIOUSLY BEEN IN. DET JOSEY ARRIVED ON-SCENE ASKED THE VICTIM IN APARTMENT ONE IN THE PRESENCE OF SGT KERN IF SHE WOULD GIVE HER CONSENT TO SEARCH HER APARTMENT, THE VICTIM STATED "NO." AT THIS TIME DET JOSEY ALONG WITH SGT KERN RESPONDED TO APARTMENT TWO WHERE MS PRINGLE REAFFIRMED HER CONSENT TO SEARCH BY SIGNING A BPD CONSENT TO SEARCH FORM. SGT KERN PHOTOGRAPHED THE ARREST SCENE, FIREARM, AND DAMAGE TO THE DOOR/FRAME. THE FIREARM WAS ALSO RECOVERED AND MADE SAFE BY SGT KERN. THE FIREARM WAS FOUND TO HAVE ONE LIVE .380 CALIBER ROUND IN THE CHAMBER. THE VICTIM WAS ADVISED BY SGT KERN THAT A FIREARM WAS RECOVERED FROM APARTMENT TWO. SGT KERN THEN REPEATEDLY ASKED FOR THE VICTIM'S CONSENT TO SEARCH APARTMENT ONE TO WHICH SHE REPEATEDLY REPLIED "NO." THE VICTIM FURTHER STATED THAT THE SUSPECT DOES NOT RESIDE THERE (APARTMENT #1). THE VICTIM WAS ADVISED OF HER RIGHTS UNDER 209A AND REFUSED MEDICAL ATTENTION AND SHELTER AT THIS TIME. OFFICERS PUGLIA AND HARLOW RECOVERED FROM THE SECOND FLOOR KITCHEN THE SUSPECTS JACKET AND BACKPACK. THE SUSPECTS JACKET (BLUE BOMBER JACKET) WILL BE HELD AS EVIDENCE. THE SUSPECTS BACKPACK WAS PLACED IN THE B-3 GUN LOCKER AND HELD FOR SAFEKEEPING. AT THE BOOKING DESK OFFICER PUGLIA AGAIN ADVISED THE SUSPECT OF HIS MIRANDA RIGHTS AND THE ADDITIONAL CHARGES AGAINST HIM REGARDING THE FIREARM. THE SUSPECT AT THAT TIME STATED "IT DOESN'T WORK." THE FIREARM WAS ENTERED INTO THE B-3 GUN LOG: BOOK #2, PAGE #55. BALLISTICS FORM 2419 COMPLETED. ALSO RESPONDING WERE: C431D (COWART), C426D (ESPINOLA), T526 (WILLIAMS), OFFICER DELEON, C101D (TAXTER & HENRIQUEZ), C202D (DOTTIN & YOUNGER). ADA FRANKS WAS NOTIFIED OF THIS INCIDENT. THE SUSPECT TO BE CHARGED WITH THE FOLLOWING: ASSAULT BY MEANS OF A DANGEROUS WEAPON (GUN) 209A, BREAKING AND ENTERING DAYTIME TO A DWELLING, MALICIOUS DESTRUCTION OF PROPERTY, UNLAWFUL POSSESSION OF A FIREARM, AND UNLAWFUL POSSESSION OF AMMUNITION.

| UNIT ASSIGNED | TOUR OF DUTY | REPORTING OFFICER'S NAME | REPORTING OFFICER'S ID | PARTNER'S ID | FI |
|---|---|---|---|---|---|
| CK01D | 2 | THOMAS G. GRIFFITHS | 10957 | 12020 | NO |
| DATE OF REPORT | SPECIAL UNITS NOTIFIED(REPORTING) | | | | TELETYPE NO |
| 12/20/04 | DOMESTIC VIOLENCE UNIT | | | | |
| TIME COMPLETED | PATROL SUPERVISOR NAME | PAT. SUP. ID | DUTY SUP. NAME | | DUTY SUP. ID |
| 06:55 PM | | | MICHAEL V KERN | | 11620 |

**004**

# EXHIBIT C



# Boston Police Department
## Arrest Booking Form

**Report Date:** 02/10/2005 15:21
**Booking Status:** Verified
**Printed By:** CAMPBELL, Daniel

**District:** 03    **UCR Code:** 0403
**Court of Appearance:** Dorchester District Court
**Master Name:** BATTLE, Tyerone    **Age:** 24
**Location of Arrest:** 15 Dunlap St, Dorchester

**Booking Name:** BATTLE, Tyrone
**Alias:** BATTLE, Tyerone
**Address:** 15 Dunlap ST #1, DORCHESTER MA 02124
US

**Charges:**

Assault & Battery, Dangerous Weapon (209A) (265:15B)
Dwelling House; Day Breaking And Entering (266-18)
Destruction or Injury of Personal Property (266-127)
Unlawful Possession of Ammunition (269-10H)
Unlawful Possession of Firearm (269-10 (h))
Assault and Battery by means of a Dangerous Weapon (265-15A) (Docket #:0302CR005211);Roxbury District

**Booking #:** 04-02824-03    **Incident #:** 040684864    **CR Number:** 000572-97
**Booking Date:** 12/20/2004 16:39    **Arrest Date:** 12/20/2004 15:35    **RA Number:**

| | | |
|---|---|---|
| **Sex:** Male | **Height:** 6'00 | **Occupation:** Outreach |
| **Race:** Black Non-Hispanic | **Weight:** 210    lbs | **Employer/School:** Baker House |
| **Date of Birth:** 09/19/1980 | **Build:** Slim | **Emp/School Addr:** Washington St, |
| **Place of Birth:** Boston MA US | **Eyes Color:** Brown | **Social Sec. Number:** 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 |
| **Marital Status:** Single | **Hair Color:** Black | **Operators License:** |
| **Mother's Name:** Battle, Michelle | **Complexion:** Medium Brown | **State:** |
| **Father's Name:** Hankerson, Phillip | | |

**Phone Used:** Yes    **Scars/Marks/Tattoos:** Scars / Left Thigh
**Examined at Hospital:** No    **Clothing Desc:** grey sweater, blue jeans, brown/blue boots
**Breathalyzer Used:** No
**Examined by EMS:** No

| | | | |
|---|---|---|---|
| **Arresting Officer:** BPD | 11385 | PUGLIA, John F | **Cell Number:** 5 |
| **Booking Officer:** BPD | 11982 | SLAMIN, Richard | **Partner's #:** 10957 |
| **Informed of Rights:** BPD | 11982 | SLAMIN, Richard | **Unit #:** CK01D |
| **Placed in Cell By:** BPD | 11982 | SLAMIN, Richard | **Trans Unit #:** C202D |
| **Searched By:** BPD | 11385 | PUGLIA, John F | |

**Cautions:**    **Booking Comments:**    **Visible Injuries:**
Armed    bop and q5 completed    none

**Person Notified:**    **JUVENILE INFORMATION**    **Phone:**
**Address:**    **Relationship:**
**Notified By:**    **Juv. Prob. Officer:**
    **Notified Date/Time:**

**Bail Set By:**    I Selected the Bail Comm.
**Bailed By:**
**Amount:**    _____
    *Signature of Prisoner*

| **BOP Check:** | BPD | 11982 | SLAMIN, Richard | |
|---|---|---|---|---|
| **Suicide Check:** | | | | |
| **BOP Warrant:** | | | | |
| **BOP Court:** | | | | *Signature of Duty Supervisor* |

**001**

# Boston Police Department

## Prisoner Booking Form

**Report Date:** 12/20/2004 17:06

**Booking Status:** Unverified

**Printed By:** SLAMIN, Richard

**Booking Name:** BATTLE

**First:** Tyrone

**Middle:**                                          **Suffix:**

**Home Address:** 15 Dunlap ST #1, DORCHESTER MA 02124
US

**Sex:** Male

**Race:** Black Non-Hispanic

**Date of Birth:** 09/19/1980

**District:** 03

**Booking Number:** 04-02824-03          **Arrest Date:** 12/20/2004 15:35

**Incident Number:** 040684864            **Booking Date:** 12/20/2004 16:39

 

**Charges:**    Assault & Battery, Dangerous Weapon (209A) (265:15B)
Dwelling House; Day Breaking And Entering (266-18)
Destruction or Injury of Personal Property (266-127)
Unlawful Possession of Ammunition (269-10H)

## Miranda Warning

Before asking you any questions, it is my duty to advise you of your rights:

1) You have the right to remain silent;

2) If you choose to speak, anything you say may be used against you in a court of law or other proceeding;

3) You have the right to consult with a lawyer before answering any questions and you may have him present with you during questioning;

4) If you cannot afford a lawyer and you want one, a lawyer will be provided for you by the State without cost to you;

5) You may also waive the right to counsel and your right to remain silent and you may answer any question or make any statement you wish. If you decide to answer any questions you may stop any time to consult with a lawyer.

Do you understand what I have told you?          **Informed Rights By Officer:**

Yes, I understand                                              BPD    11982   SLAMIN, Richard

X _Tyrone Battle_                                               _J. _____

_Signature of Prisoner_                                       _Signature of Officer_

## Prisoner Property

**Telephone Used:** Yes

**Breathalyzer Used:** No

**Examined at Hospital:** No

**Examined by EMS:** No

**Visible Injuries:**
none

Money: 8.00          **Property Storage No:**

Property: black belt, shoelaces, white wave cap, set of keys, 1 pen, gold colred claddaugh ring w/green stone

Acknowledgement of property items being held

X _Tyrone Battle_

_Signature of Prisoner_

002

# EXHIBIT  D

# BostonPolice
### D E P A R T M E N T

1 Schroeder Plaza, Boston, MA 02120-2014

DATE: 12-20-04
Page 1 of 1
CC: 040-684864

TO:         Lt. Det. Kevin Averill, District Three Detective Commander

FROM:       Det. Brian C. Black, ID # 10387

SUBJECT:    Tyrone Battle Interview

SIR:

    I respectfully submit, about 7:10 PM on Monday December 20, 2004 B3
detectives William Doogan and Brian Black conducted a taped interview of Tyrone
Battles relative to his arrest this date. Battles was given the Miranda warning, both orally
and in writing. He waived his rights. He further agreed to a taped interview and signed
the taped interview form.

<div align="right">

Respectfully submitted,

Brian C. Black
Detective – District Three

</div>

**007**

# EXHIBIT E

**BostonPolice**
D E P A R T M E N T

1 Schroeder Plaza, Boston, MA 02120-2014

## BOSTON POLICE DEPARTMENT

## MIRANDA WARNING

NAME: _Tyrone Battle_  D.O.B. 09 , 19 , 82

ADDRESS: _15 Dunlap St. #1_  DATE: _12-20-04_  TIME: _7:40 PM_

BEFORE WE ASK YOU ANY QUESTIONS, YOU MUST UNDERSTAND YOUR RIGHTS:

1.  YOU HAVE THE RIGHT TO REMAIN SILENT.  _TB_

2.  ANYTHING YOU SAY CAN BE USED AGAINST YOU IN COURT OR OTHER PROCEEDING.  _TB_

3.  YOU HAVE THE RIGHT TO TALK TO A LAWYER FOR ADVICE BEFORE WE ASK YOU ANY QUESTIONS, AND TO HAVE HIM/HER WITH YOU DURING QUESTIONING.  _TB_

4.  IF YOU CANNOT AFFORD A LAWYER AND YOU WANT ONE, A LAWYER WILL BE PROVIDED FOR YOU BY THE COMMONWEALTH WITHOUT COST TO YOU.  _TB_

5.  IF YOU DECIDE TO ANSWER QUESTIONS NOW WITHOUT A LAWYER PRESENT, YOU WILL STILL HAVE THE RIGHT TO STOP ANSWERING QUESTIONS AT ANYTIME UNTIL YOU TALK TO A LAWYER.  _TB_

I _Tyrone Battle_  HAVE READ AND UNDERSTAND THE ABOVE

RIGHTS AS EXPLAINED TO ME BY _Det. Brian Black_ AND I AM WILLING TO MAKE A STATEMENT AT THIS TIME WITHOUT A LAWYER BEING PRESENT.

SIGNED: _Tyrone Battle_ TIME/DATE _9-9-7_
                                    _12-20-04  7:10 p.m._
WITNESS: _William E. Dirogan_

**128**

# EXHIBIT  F

# BOSTON POLICE DEPARTMENT
# ELECTRONIC RECORDING OF INTERVIEW
# FORM

I, _TYRONE BATTLE_, have been advised of my opportunity to have this interview electronically recorded (audio tape) by the Boston Police Department.

(check one and initial)

_✓_  I agree to have my interview electronically recorded _T.B._

___  I decline to have my interview electronically recorded _____

Signed: _X Tyrone Battle_

Date: _12-20-04_      Time: _7:15 p.m._

Witness: _William E. Dovgan_

Witness: _Brian Black, D.C._

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Additional information (if applicable):

____  Having initially declined to have my interview recorded, I now choose to have the remainder of my interview recorded (Initials): _____ , (Time): _____

____  Having initially agreed to have my interview recorded, I now decline to have the remainder of my interview recorded (Initials): _____ , (Time): _____

Signed: _____

Witness: _____

Witness: _____

**129**

# EXHIBIT  G

# BostonPolice
*D E P A R T M E N T*

1 Schroeder Plaza, Boston, MA 02120-2014

**Page**    1 of 1
**Date**    12/20/2004
**CC**    040684864

**DISTRICT/UNIT: B3 – CK01D**

**TO:**    Captain Timothy J. Murray, Commander, Area B-3

**FROM:**    Police Officer Daniel P. Harlow, ID # 12020

**SUBJECT:**    Person with a gun at 15 Dunlap Street # 1

Sir:

I respectfully report on Monday 12/20/2004 at about 3:30 p.m. I along with officers Puglia & Griffiths assigned to CK01D responded to 15 Dunlap Street # 1. for a person with a gun.

I respectfully report that I interviewed the following witnesses at 15 Dunlap Street # 3.

I interviewed a Latoya Capers D.O.B. ████████ 28-year-old black female, Tel: (617) ████████. Miss. Capers is also the person who called 911. Miss. Capers stated to me that she was standing on the third floor stairway looking down while both the victim (Awogboro, Chadena D.O.B. ████████) and suspect (Battle, Tyrone D.O.B. 09/19/1980) were fighting. Miss. Capers stated she heard the victim state, "Debbie, Debbie, help me, help me, he's trying to kill me, he's trying to kill me." Miss. Capers stated she did not see any weapons, but her mother (Jacobs, Karen D.O.B. ████████) told her that the man had a gun.

I interviewed a Karen Jacobs D.O.B. ████████ 48-year-old black female, Tel: (617) ████████. Miss Jacobs stated to me that she was standing on the third floor stairway looking down while both the victim (Awogboro, Chadena D.O.B. ████████) and suspect (Battle, Tyrone D.O.B. 09/19/1980) were fighting. Miss Jacobs stated she heard both the suspect and the victim fighting in the hallway. Miss Jacobs stated that she saw the suspect in the hallway with what she believed to be a gun.

Respectfully Submitted,

*[signature]*

Police Officer Daniel P.Harlow
ID # 12020

**005**

# EXHIBIT  H

# BostonPolice

D E P A R T M E N T                                    1 Schroeder Plaza  Boston, MA 02120-2014

## Consent to Search

I *Sandra Pringle* freely and voluntarily give consent for officers of the Boston Police Department to search the following premises or vehicle:

*15 Dunlap St Apt #2, Dorchester MA.*

The consent to search is given voluntarily without coercion or curess. I understand that I do not have to give consent for this search.

signed *Sandra Pringle*   date *12-20-04*    *4.37*

Detective *[signature]*   *4.38pm*

Witness *[signature] #11646*   *4.39pm*

**006**

# EXHIBIT I

```
************************   *************************  :************************
*                                                                             *
*                  ******* WARNING ******** WARNING ********                  *
*                                                                             *
*      THIS INFORMATION IS CORI.  IT IS NOT SUPPORTED BY FINGERPRINTS.        *
*PLEASE CHECK THAT THE NAME REFERENCED BELOW MATCHES THE NAME AND DATE OF BIRTH*
*OF THE PERSON REQUESTED.                                                     *
*                                                                             *
*******************************************************************************
```

```
          **********    COMMONWEALTH OF MASSACHUSETTS    **********
                        CRIMINAL HISTORY SYSTEMS BOARD

                      *** PERSONS COURT SUMMARY ***
```

NAM: BATTLE, TYRONE B              FORMAL-NAM: TYRONE          PCF: 00002184979
DOB: 09/19/80   SEX: M  RAC: B       POB: BOSTON              SSN: 031609632
MOM:MICHELLE BATTLES    POP:PHILLIP        HGT: 511 WGT: 185 HAI: BLK EYE: BRO
ADDRESS: 15 DUNLAP STREET #1 DORCHESTER MA

```
***** ***** ***** ***** ADULT APPEARANCES ***** ***** ***** *****
```

ARRAIGNMENT: (001)
  ARG-DATE: 12/21/04 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:    0407CR7853A
  OFF:  A&B DANGEROUS WEAPON          FIREARM              A&B DW
  DISP: C 2/18/05                                          STATUS: O   WPD:

ARRAIGNMENT: (002)
  ARG-DATE: 12/21/04 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:    0407CR7853B
  OFF:  B&E DT W/I COM FEL                                 B&E DT W/I FEL
  DISP: C 2/18/05                                          STATUS: O   WPD:

ARRAIGNMENT: (003)
  ARG-DATE: 12/21/04 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:    0407CR7853C
  OFF:  MAL DESTRUCTION OF PROPERTY                        PROP MAL DES
  DISP: C 2/18/05                                          STATUS: O   WPD:

ARRAIGNMENT: (004)
  ARG-DATE: 12/21/04 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:    0407CR7853D
  OFF:  POSS FIREARM W/O PERMIT                            FIR POSS WO PERM
  DISP: C 2/18/05                                          STATUS: O   WPD:

ARRAIGNMENT: (005)
  ARG-DATE: 12/21/04 PD: BOS COURT: DORCHESTER DISTRICT    DKT#:    0407CR7853E
  OFF:  POSS FIREARM W/O PERMIT                            FIR POSS WO PERM
  DISP: C 2/18/05                                          STATUS: O   WPD:

ARRAIGNMENT: (006)
    ARG-DATE: 09/22/04 PD: BOS COURT: ROXBURY DISTRICT         DKT#:   0302CR005211A
    OFF:   A&B DANGEROUS WEAPON                                A&B DW
    DISP: C12/10/04 DF                                         STATUS: W    WPD: BOS
                                                                            12/10/04


ARRAIGNMENT: (007)
    ARG-DATE: 09/22/04 PD: BOS COURT: ROXBURY DISTRICT         DKT#:   0302CR005211B
    OFF:   ASSAULT                                             ASLT
    DISP: C 12/10/04 DF                                        STATUS: W    WPD: BOS
                                                                            12/10/04


ARRAIGNMENT: (008)
    ARG-DATE: 09/21/04 PD: BOS COURT: DORCHESTER DISTRICT      DKT#:   0407CR5702A
    OFF:   ASSAULT DANGEROUS WEAPON        GLASS BOTTLE        ASLT DW
    DISP: C 2/18/05                                            STATUS: O    WPD:


ARRAIGNMENT: (009)
    ARG-DATE: 02/13/02 PD: BOS COURT: DORCHESTER DISTRICT      DKT#:   0207CR1021A
    OFF:   KNOWINGLY REC STOLEN PROP       MV                  RSG
    DISP: 3/11/02 G 2.5YRS 1YR CMTD BAL SS 9/11/03 VN 8/21/3   STATUS: C    WPD:
           DF10/20/03D/R10/30/03 EXT 1/30/04CCVN1/16/04VOPTER


ARRAIGNMENT: (010)
    ARG-DATE: 12/03/01 PD: BOS COURT: ROXBURY DISTRICT         DKT#:   0102CR005617A
    OFF:   CONTROL SUBSTANCE SCHOOL                            CSA SCHOOL
    DISP: C 12/18/01 DISM                                      STATUS: C    WPD:


ARRAIGNMENT: (011)
    ARG-DATE: 12/03/01 PD: BOS COURT: ROXBURY DISTRICT         DKT#:   0102CR005617B
    OFF:   POSS CLASS B CONT SUB                               CSA POSS B
    DISP: C 12/18/01 DISM                                      STATUS: C    WPD:


ARRAIGNMENT: (012)
    ARG-DATE: 12/03/01 PD: BOS COURT: ROXBURY DISTRICT         DKT#:   0102CR005617C
    OFF:   KNOWINGLY REC STOLEN PROP       MV                  RSG
    DISP: C 12/18/01 G PROB 12/18/02 PSF VWF VN 6/25/02        STATUS: C    WPD:
           VOP 1YR CMTD


ARRAIGNMENT: (013)
    ARG-DATE: 09/07/01 PD: BOS COURT: DORCHESTER DISTRICT      DKT#:    0107CR6097A
    OFF:   POSS TO DISTRIBUTE CLASS B                          CSA POSS DIST B
    DISP: C 10/19/01 CWOF 10/18/02 3/11/02 VOP 1YR CMTD        STATUS: C    WPD:


**054**

ARG-DATE: 09/07/01 PD: E    COURT: DORCHESTER DISTRI‹      DKT#:    0107CR6097B
OFF:   POSS CLASS D CONT SUB                            CSA POSS D
DISP: C 10/19/01 CWOF 4/19/02 3/11/02 VOP 1YR CMTD      STATUS: C   WPD:


ARRAIGNMENT: (015)
ARG-DATE: 01/11/99 PD: BOS COURT: DORCHESTER DISTRICT     DKT#:    9907CR0236A
OFF:   POSS OF FIREARM                  NOT HOME/WRK NO LIC FIR POSS
DISP: C 2/9/99 G 2YR 1YR CMTD BAL SS 2/8/01 TERM         STATUS: C   WPD:


ARRAIGNMENT: (016)
ARG-DATE: 01/11/99 PD: BOS COURT: DORCHESTER DISTRICT     DKT#:    9907CR0236B
OFF:   POSS OF AMMUNITION                               POSS AMMO
DISP: C 2/9/99 G 1YR CMTD (CONC A) TERM                 STATUS: C   WPD:


***** ***** ***** **** END OF ADULT APPEARANCES ***** ***** ***** *****

REQUESTED BY: RUDNICKI
COMPLETED BY: RUDNICKI, LISA
       AGENCY: US ATF - BOSTON

NAM: BATTLE, TYRONE B                    PCF: 00002184979 DOB: 09/19/80
**********************************************************************
*** THE FOLLOWING ARRAIGNMENTS ARE JUVENILE APPEARANCES ***
*** PLEASE CHECK THE NEWS FILE FOR DISSEMINATION GUIDELINES ***
**********************************************************************

ARRAIGNMENT: (001)
  ARG-DATE: 11/18/97 PD: BOS COURT: BOSTON JUVENILE JURY OF DKT#:    FIY9700802
  OFF:  A&B DANGEROUS WEAPON           HAND GUN          A&B DW
  DISP: 1/8/98 GULTY CMTD DYS (AGE 21) HOC 2 YEARS SS PROB STATUS: C   WPD:
        9/19/01 VOP 4/9/01 DISM


ARRAIGNMENT: (002)
  ARG-DATE: 11/18/97 PD: BOS COURT: BOSTON JUVENILE JURY OF DKT#:    FIY9700803
  OFF:  ARMED ROBBERY                            ROB ARM
  DISP: 1/8/98 GUILTY CMTD DYS (AGE 21)          STATUS: C   WPD:


ARRAIGNMENT: (003)
  ARG-DATE: 07/28/97 PD: BOS COURT: DORCHESTER JUVENILE   DKT#:    9707YO0033A
  OFF:  A&B DANGEROUS WEAPON                     A&B DW
  DISP: C 9/8/97 10/6/97 11/18/97 (@71)          STATUS: C   WPD:


ARRAIGNMENT: (004)
  ARG-DATE: 07/28/97 PD: BOS COURT: DORCHESTER JUVENILE   DKT#:    9707YO0033B
  OFF:  ROBBERY                  ARMED           ROB
  DISP: C 9/8/97 10/6/97 11/168/97 (@71)         STATUS: C   WPD:


ARRAIGNMENT: (005)
  ARG-DATE: 04/09/97 PD: BOS COURT: DORCHESTER JUVENILE   DKT#:    9707JV0311A
  OFF:  ROBBERY                  ARMED           ROB
  DISP: C 5/19/97 6/16/97 6/30/97 7/28/97 DISM & INDICT   STATUS: C   WPD:


ARRAIGNMENT: (006)
  ARG-DATE: 04/09/97 PD: BOS COURT: DORCHESTER JUVENILE   DKT#:    9707JV0311B
  OFF:  ASSAULT DANGEROUS WEAPON        HANDGUN   ASLT DW
  DISP: C 5/19/97 616/97 6/30/97 7/28/97 DISM & INDICT    STATUS: C   WPD:


ARRAIGNMENT: (007)
  ARG-DATE: 01/23/97 PD: BOS COURT: DORCHESTER JUVENILE   DKT#:    9707JV0051A
  OFF:  ASSAULT DANGEROUS WEAPON        PELLET GUN   JOASLT DW
  DISP: C 1/28/97 2/24/97 CWF 2/24/98 6/16/97 DYS CMTD    STATUS: C   WPD:

**056**

END.>-<
CJIS 087736   02/10/2005 1522   S0753/6028.
UL.
CR.WVFBINF00
13:23 02/10/2005 20587
13:23 02/10/2005 11573 MAATFBSS0
TXT
HDR/2L01
ATN/RUDNICKI
********************* CRIMINAL HISTORY RECORD  *********************

Data As Of           2005-02-10

************************** INTRODUCTION ***************************

This rap sheet was produced in response to the following request:

FBI Number           206554DB5
Purpose Code         C
Attention            RUDNICKI

The information in this rap sheet is subject to the following caveats:

This record is based only on the FBI number in your request-206554DB5.
Because additions or deletions may be made at any time, a new copy
should be requested when needed for subsequent use. (US; 2005-02-10)
All arrest entries contained in this FBI record are based on
fingerprint comparisons and pertain to the same individual. (US;
2005-02-10)
The use of this record is regulated by law. It is provided for official
use only and may be used only for the purpose requested. (US;
2005-02-10)

************************** IDENTIFICATION *************************

Subject Name(s)

BATTLE, TYERONE
BATTLE, TYRONE   (AKA)

Subject Description

FBI Number
206554DB5
Social Security Number
031609632

Sex                  Race                                        **057**
Male                 Black

Height               Weight               Date of Birth
5'00"                170 Pounds           1979-09-19
                                          1980-09-19

Hair Color           Eye Color            Fingerprint Pattern
Black (1997-01-31)   Brown (1997-01-31)   17PI11161217PM11CI14  (FPC)
          RS WU RS WU RS LS WU WU WU LS (Other)

Scars, Marks, and Tattoos
Code                        Description, Comments, and Images
NCIC                        SC L THGH; S
SCAR ON LEFT THIGH (WVFBINF00)

Place of Birth
MA

Photo Images
Type
Other                       Arresting agency has photo associated with
                            arrest date of 1997/01/22 (MA0130100)
Other                       Arresting agency has photo associated with
                            arrest date of 2001/03/23 (MA0130100)
Other                       Arresting agency has photo associated with
                            arrest date of 2001/09/07 (MA0130100)
Other                       Arresting agency has photo associated with
                            arrest date of 2001/12/03 (MA0130100)
Other                       Arresting agency has photo associated with
                            arrest date of 2002/02/12 (MA0130100)
Other                       Arresting agency has photo associated with
                            arrest date of 2003/10/17 (MA0130100)
Other                       FBI has one photo associated with arrest date
                            of 2003/10/17 (WVFBINF00)
Other                       Arresting agency has photo associated with
                            arrest date of 2004/09/21 (MA0130100)
Other                       FBI has one photo associated with arrest date
                            of 2004/09/21 (WVFBINF00)
Other                       Arresting agency has photo associated with
                            arrest date of 2004/12/20 (MA0130100)
Other                       FBI has one photo associated with arrest date
                            of 2004/12/20 (WVFBINF00)


*************************  CRIMINAL HISTORY  *************************


============================ Cycle 001 ============================
Earliest Event Date       1997-01-22
------------------------------------------------------------------
Arrest Date               1997-01-22
Arrest Case Number        97000572
Arresting Ag
ency        POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name            BATTLE, TYERONE
Charge                    01
    Charge Description    ASSAULT B/M DANG WEAPON-PELLET GUN
            Severity      Unknown

============================ Cycle 002 ============================
Earliest Event Date       1997-01-22
------------------------------------------------------------------
Arrest Date               1997-01-22
Arrest Case Number        970037282
Arresting Agency          POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name            BATTLE, TYERONE
Charge                    01
    Charge Description    A & B DW; OTHER
            Severity      Unknown

058

```
============================= === Cycle 003 =========== :===============
Earliest Event Date      2001-03-23
-------------------------------------------------------------------------
Arrest Date              2001-03-23
Arrest Case Number       1997000572
Arresting Agency         POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name           BATTLE, TYERONE
Charge                   01
    Charge Description   DYS WARRANT
            Severity     Unknown
Charge                   02
    Charge Description   PAROLE VIOLATION
            Severity     Unknown


============================== Cycle 004 ============================
Earliest Event Date      2001-09-07
-------------------------------------------------------------------------
Arrest Date              2001-09-07
Arrest Case Number       1997000572
Arresting Agency         POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name           BATTLE, TYERONE
Charge                   01
    Charge Description   POSSESSION W/I TO DISTRIBUTE, CLASS B
            Severity     Unknown
Charge                   02
    Charge Description   POSSESSION OF CLASS D
            Severity     Unknown


============================== Cycle 005 ============================
Earliest Event Date      2001-12-03
-----
-------------------------------------------------------------
Arrest Date              2001-12-03
Arrest Case Number       1997000572
Arresting Agency         POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name           BATTLE, TYERONE
Charge                   01
    Charge Description   RECEIVING STOLEN MOTOR VEHICLE
            Severity     Unknown
Charge                   02
    Charge Description   OPERATING WITHOUT A LICENSE
            Severity     Unknown


============================== Cycle 006 ============================
Earliest Event Date      2002-02-12
-------------------------------------------------------------------------
Arrest Date              2002-02-12
Arrest Case Number       1997000572
Arresting Agency         POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name           BATTLE, TYERONE
Charge                   01
    Charge Description   REC STLN MOTOR VEHICLE
            Severity     Unknown
Charge                   02
    Charge Description   OPERATING WITHOUT LICENSE
            Severity     Unknown


:============================== Cycle 007 ============================
```

**059**

```
Arrest Date                    2003-10-17
Arrest Case Number             1997000572
Arresting Agency               POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name                 BATTLE, TYERONE
Charge                         01
    Charge Description         RECEIVING STOLEN MOTOR VEHICLE
            Severity           Unknown
```

============================= Cycle 008 =============================

```
Earliest Event Date            2004-09-21
```
----------------------------------------------------------------------
```
Arrest Date                    2004-09-21
Arrest Case Number             1997000572
Arresting Agency               POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name                 BATTLE, TYERONE
Charge                         01
    Charge Description
  ASSAULT BY MEANS OF A DANGEROUS WEAPON
            Severity           Unknown
Charge                         02
    Charge Description         ASSAULT AND BATTERY BY MEANS OF A DANGEROUS
                               WEAPON
            Severity           Unknown
```

============================= Cycle 009 =============================

```
Earliest Event Date            2004-12-20
```
----------------------------------------------------------------------
```
Arrest Date                    2004-12-20
Arrest Case Number             1997000572
Arresting Agency               POLICE DEPARTMENT BOSTON; MA0130100;
Subject's Name                 BATTLE, TYERONE
Charge                         01
    Charge Description         ASSAULT & BATTERY, DANGEROUS WEAPON 209A
            Severity           Unknown
Charge                         02
    Charge Description         DWELLING HOUSE DAY BREAKING AND ENTERING
            Severity           Unknown
Charge                         03
    Charge Description         DESTRUCTION OR INJURY OF PERSONAL PROPERTY
            Severity           Unknown
Charge                         04
    Charge Description         UNLAWFUL POSSESSION OF AMMUNITION
            Severity           Unknown
Charge                         05
    Charge Description         UNLAWFUL POSSESSION OF FIREARM
            Severity           Unknown
Charge                         06
    Charge Description         ASSAULT AND BATTERY BY MEANS OF A DANGEROUS
                               WEAPON
            Severity           Unknown
```

************************  INDEX OF AGENCIES  *************************

```
Agency                         FBI-CJIS DIV-CLRKSBG CLARKSBURG; WVFBINF00;
Mailing Address                 1000 CUSTER HOLLOW RD
                               CLARKSBURG, WV 26306
```

060

```
Agency                 POLICE DEPARTMENT BOSTON; MA0   5100;
Mailing Address        ROOM 149-SOUTH 1 SCHROEDER PLAZA
                       BOSTON, MA 021202014
```

\* \* \* END OF RECORD \* \* \*

# EXHIBIT  J

# MOTION FILED
# UNDER SEAL

# EXHIBIT K

# MOTION FILED UNDER SEAL

# EXHIBIT L

# MOTION FILED
# UNDER SEAL