United States District Court
District of Massachusetts

```
_____
                              )
UNITED STATES OF AMERICA,     )
                              )
          v.                  )
                              )   Criminal No.
TYRONE B. BATTLE, a/k/a TYERONE )  05-10053-NMG
BATTLE,                       )
                              )
          Defendant.          )
_____)
```

**MEMORANDUM & ORDER**

**GORTON, J.**

In this pending criminal action, Defendant Tyrone B. Battle, a/k/a Tyerone Battle ("Battle"), moves this Court to suppress evidence and statements arising from his arrest by Boston police officers on December 20, 2004. Specifically, Battle alleges that police officers illegally searched Apartment #2 at 15 Dunlap Street, Dorchester, Massachusetts, on the date in question when they seized Battle's gun and ammunition from that apartment. Battle contends that all of his statements to the police after the allegedly illegal search and seizure must be suppressed as "fruit of the poisonous tree". Having considered the memoranda in support and opposition of this pending motion, the Court now resolves the issue as follows.

**I.   Factual Background**

On December 20, 2004 at approximately 3:30 p.m., Boston

Police received an emergency 911 call from a woman, later identified as LaToya Capers ("Capers"), who said words to the effect that there was a light-skinned black man with a gun in the hallway outside her apartment saying he was going to kill a woman. The caller did not identify herself nor the man by name or any other description, but she gave an address of 15 Dunlap Street, Dorchester, Massachusetts. She also did not say that she had seen anyone with a gun but only that she had heard someone yelling about a gun. The caller then hung up. The call to 911 was placed from a cell phone, and the 911 operator called back for additional information. At that point the woman who answered the phone informed the operator that the man had left the building and had gone into a neighbor's house.

    A police dispatcher, not the 911 operator, subsequently radioed to police units the report of a male with a gun and a woman screaming in the hallway of 15 Dunlap Street. Shortly thereafter, Boston Police Officers Griffiths, Puglia and Harlow, who were in plain clothes, arrived at 15 Dunlap Street, a triple-decker residence, and observed the main entry to the building open. The officers also observed that the front door to the first-floor apartment, Apartment #1, had been forced open, with the inside of the doorjamb forced off the frame. The officers entered that apartment to conduct a protective sweep but did not find any victim or suspect inside the apartment. It was later

determined that the tenants of Apartment #1 were Chadena Awogboro ("Awogboro") and the defendant, Tyrone Battle, who lived there with two of their children.

Officers Harlow and Puglia then went upstairs and spoke with Capers and her godmother, Karen Jacobs ("Jacobs"), in Apartment #3 on the third floor.  Capers and Jacobs reported that they heard a fight occurring between the first floor neighbors and that they heard something to the effect of, "Debbie, Debbie...help me...help me...he's trying to kill me."  They also stated that they heard the word "gun" being yelled out at some point during the altercation.

In the meantime, Officer Griffiths went to Apartment #2 on the second floor and spoke with the tenant, Sandra "Debbie" Pringle ("Pringle").  Pringle, who lived in the apartment with her two daughters, was asked if there was anyone in the apartment with her and she stated, "Just me and my kids."  The officer asked her if she had heard any fighting downstairs and she said that she had heard an argument but did not want to get involved. Officer Griffiths then asked if he could check the apartment, allegedly for her and her children's safety.  Pringle permitted the police to come into her apartment and look around.

While checking the apartment, Officer Griffiths observed a blue or black bomber-style jacket on a kitchen chair.  When asked about it, Pringle falsely stated that it belonged to her brother.

Officer Griffiths then went into one of the bedrooms and found a female, later identified as Chadena Awogboro, with four children (later identified as Awogoboro's and Pringle's children). Pringle falsely informed the officer that Awogboro was her sister-in-law. Officer Puglia then came into Pringle's apartment to assist Griffiths and stated that he had information that the victim was possibly inside Apartment #2. Puglia asked the woman in the bedroom for her name and she said that it was "Joy".

Officer Griffiths then continued a protective sweep of Pringle's apartment. In another bedroom he looked inside a closet and, under a pile of clothes, found the defendant, Tyrone Battle. Battle was taken out of the closet, handcuffed (allegedly for officer safety), and immediately read his Miranda rights, which Battle stated he understood. Battle was questioned about what happened and admitted that he had forced his way into his first floor apartment because his girlfriend had locked him out and that he was trying to retrieve some of his belongings. While Battle was being questioned, police determined that there was an outstanding arrest warrant against him on a prior criminal matter, and he was then transported to the police station for booking.

After Battle was removed, the police conducted a second search of Pringle's apartment. That search was initiated after Pringle told them she wanted to show them something and then

-4-

directed them to a bureau in her bedroom. Pringle opened the drawer and showed the officers a fully loaded handgun, which she stated Battle had placed there without her consent. Detective Josey then asked Pringle if she would reaffirm her voluntary oral consent to search her apartment by signing a written consent form which she did.

At the police station, Battle agreed to a recorded interview by Detectives Black and Doogan wherein he gave a full confession regarding the incident and recovery of the firearm and ammunition. He admitted that he had hidden in Pringle's bedroom closet because he knew the police were outside of her apartment and he stated that the loaded firearm in Pringle's bureau was his. Battle identified the gun by color, make and the number of bullets in the magazine. He also gave the location of where he had hidden the gun which matched the location where it was found. Battle said that he hid the gun in Pringle's apartment because he did not want it in his apartment, anticipating a police response to Awogboro's screams during their argument. Battle told the police he had stolen the gun from an individual named "Blake" about a year earlier.

## II. Legal Analysis

Defendant moves this Court to suppress the evidence seized by the police from 15 Dunlap Street, Apartment #2, as well as the statements he made to police during and after his arrest. As

grounds for his motion, Defendant argues:

1) The police made a warrantless, illegal entry into the apartment he was visiting and thereafter seized him.  Defendant had a reasonable expectation of privacy in the visited apartment, the entry was not supported by probable cause or exigent circumstances and, therefore, all evidence recovered that flowed from the illegal entry into the apartment must be suppressed (specifically the pistol and ammunition recovered from the bureau drawer of Pringle's bedroom).

2) Defendant's statements made subsequent to his being advised of his <u>Miranda</u> rights were tainted by the prior illegal seizure, were obtained in violation of his Fifth Amendment rights and were so-called "fruit of the poisonous tree".  Therefore, they must be suppressed.

**A.   Legal Standard**

Before Defendant can proceed with his suppression challenge, he must establish that he has standing to make such a challenge. Fourth Amendment rights are personal rights which, like some other constitutional rights, may not be vicariously asserted. <u>Rakas</u> v. <u>Illinois</u>, 439 U.S. 128, 133-34 (1978).  A person who is aggrieved by an illegal search and seizure only through the introduction of damaging evidence secured by a search of a third person's premises or property has not had any of his Fourth Amendment rights infringed.  <u>Id.</u> at 134.

Standing does not automatically devolve upon every accused. United States v. Aguirre, 839 F.2d 854, 856 (1st Cir. 1988)(citing United States v. Salvucci, 448 U.S. 83, 90-91 (1980)). Before embarking upon the merits of a suppression challenge, a criminal defendant must show that he had a reasonable expectation of privacy in the area searched and in relation to the items seized. Id. Unless and until the "standing" threshold is crossed, the bona fides of the search and seizure are not put legitimately into issue. Id.

A reasonable expectation of privacy necessary to establish standing for a defendant to challenge a search and seizure is determined by several relevant factors. United States v. Gomez, 770 F.2d 251, 254 (1st Cir. 1985). Those factors are

> possession or ownership of the area searched or items seized; prior use of the area searched or property seized; legitimate presence in the area searched; ability to control or exclude others' use of the property; and a subjective expectation of privacy.

Id. In short, courts must look to whether or not the individual thought of the place or article as a private one and treated it as such. Aguirre, 839 F.2d at 857. Succeeding in this, a defendant must then demonstrate not only that he exhibited a subjective expectation of privacy, but also that his expectation was justifiable under the attendant circumstances. Id. Whatever facts may shed light upon either prong of this two-tier inquiry may be weighed in the balance. Id.

The factual situation presented by Defendant's case is not unique. On more than one occasion, courts have had to confront the Fourth Amendment standing issues presented by houseguests. In Minnesota v. Olson, 495 U.S. 89 (1990), the United States Supreme Court held that an overnight guest has a legitimate expectation of privacy. Nevertheless, the Supreme Court later held that one who is merely present with the consent of the householder may not have a reasonable expectation of privacy in that home. Minnesota v. Carter, 525 U.S. 83, 90 (1998). The First Circuit has held that a casual visitor has no expectation of privacy in another's home and is not afforded the protection of the Fourth Amendment. United States v. Torres, 162 F.3d 6, 10 (1st Cir. 1998).

The Supreme Court's decision is Minnesota v. Carter is particularly instructive. In that case, defendants were in another person's apartment for a short time solely for the purpose of packaging cocaine. The defendants were essentially present for a business transaction for a matter of hours (a longer period of time than Battle was in Pringle's apartment). They had no previous relationship with the apartment tenant and there was no purpose to their visit other than the business transaction. The Supreme Court held that the situation was markedly different from that of the overnight guest who was the subject in Minnesota v. Olson, and the Court declined to extend

the Fourth Amendment protections of Olson to the less intimate situation presented by Carter.

**B.   Fourth Amendment Challenge to the Search**

Pointing to the case law with respect to Fourth Amendment standing, the government argues that Battle is not in a position to challenge the search.  Specifically, the government asserts that Battle did not have an objectively reasonable expectation of privacy in Pringle's apartment and therefore does not have standing to challenge the search of her premises.

The government contends that Battle's motion does not satisfy the Gomez/Aguirre factors outlined by the First Circuit. The government asserts that Battle: 1) neither resided nor was an overnight guest at 15 Dunlap Street, Apartment #2, nor did he in any way have possession of the premises, 2) never used, had control of or direct access to that apartment and 3) did not have a reasonable expectation of privacy in the recovered handgun because he stashed it in Pringle's apartment among her personal belongings.

The government argues further that Battle cannot be deemed a social guest in the context of the facts of this case. Specifically, Pringle has stated that the argument between Battle and Awogboro had grown so loud, it was scaring her child.  When Pringle opened her door, she found the couple on the floor in the hallway and Battle had his fist raised to Awogboro.  She told the

couple to be quiet and, when the noise continued, suggested that they come into her apartment. As the government states in its opposition, a social guest is not someone who, like Battle, is invited into another's apartment because the host feels compelled to stop a fight between him and his girlfriend.

Moreover, the government asserts that Battle did not possess the requisite meaningful connection as a guest in the apartment to establish a reasonable expectation of privacy. Though Battle was friendly with Pringle, he had never spent the night in Pringle's apartment nor kept any of his personal items there nor had any access to it without Pringle being present. Furthermore, Battle was only in the apartment for a short period of time before the police arrived and there is no evidence that he was planning to linger.

Although Battle and his girlfriend were invited into the apartment by Pringle, it was only as an accommodation to the victim's screams for help. The government argues that Battle was, like the defendant in <u>Torres</u>, nothing more than a casual visitor to Pringle's apartment and as such had no expectation of privacy there. Accordingly, the government asserts that the facts and case law indicate that Battle does not have standing to challenge the search by police.

The government's reasoning is persuasive, and Defendant's response offers only a weak rebuttal. In fact, Defendant's

-10-

Suppression Motion expends only one paragraph on the standing question, before concentrating the bulk of his argument on the alleged unreasonableness of the warrantless police entry and search.  Although Defendant may have simply assumed standing was clear-cut, his few citations on the issue do not withstand the government's countervailing arguments.

　　　Specifically, Defendant cites to <u>Minnesota</u> v. <u>Olson</u> and argues that he was Pringle's social guest, and as such had a legitimate expectation of privacy in her apartment.  Defendant, citing to a Second Circuit opinion, argues that <u>Olson</u> stands for the proposition that any guest, in appropriate circumstances, may have a legitimate expectation of privacy where he is there with the permission of his host who is willing to share his house and his privacy with the guest.  <u>United States</u> v. <u>Fields</u>, 113 F.3d 313, 321 (2d Cir. 1997).

　　　Unfortunately for Defendant, he has several problems with the proposition expounded in <u>Fields</u>.  First, <u>Fields</u> has not been adopted by the First Circuit Court of Appeals.  In the First Circuit, the <u>Torres</u> standard that a casual visitor has no expectation of privacy in another's home is prevailing.  It is notable that Defendant makes no reference to <u>Torres</u> anywhere in his papers.  Second, even if <u>Fields</u> were adopted by the First Circuit, the defendant in that case was a guest who had permission to use an apartment, was given a key and used the

apartment in the owner's absence. That fact pattern is a far cry from the situation presented by the facts of this case.

Defendant has not made a convincing argument that this Court should uphold his challenge to the police search. Defendant's argument that he had a reasonable expectation of privacy in Pringle's apartment is largely dependent on the fact that Pringle consented to his presence but that action alone does not endow him with Fourth Amendment protection as a houseguest. In fact, it is unseemly for Battle to argue he had a reasonable expectation of privacy in Pringle's apartment as a result of her hospitality when the very reason for Pringle's "invitation" was an attempt to stop a fight between Battle and his girlfriend during which Battle was allegedly trying to harm her. This is the antithesis of the situation envisioned by the Supreme Court when it outlined the Fourth Amendment standing requirements for houseguests in <u>Olson</u>.

Defendant Battle was nothing more than a casual visitor in Pringle's apartment, albeit one who had the consent of the owner to be there. Battle neither possessed nor owned the area searched, nor did he have the ability to control or exclude others' use of the property. He was present in the apartment for a short time, and his presence was only at the invitation, borne of necessity, of Pringle. Even if Battle had an expectation of privacy in Pringle's apartment, that expectation was not

justifiable under the attendant circumstances. Therefore, Battle lacks standing to challenge the reasonableness of the search under the Fourth Amendment.

### C. Fourth Amendment Challenge to the Seizure

Nevertheless, Defendant is not foreclosed from challenging the legality of the seizure of the gun and ammunition. The case law on that particular question is limited. See United States v. Lisk, 522 F.2d 228 (7th Cir. 1975)("Although the issue seems simple and clear-cut, and certainly the problem must be one that frequently arises, we have been surprised to find no authority directly in point."). In Lisk, the Seventh Circuit held that the defendant had standing to object to a police seizure because of his property interest in the object seized despite the fact that he had no standing to object to the search because he lacked a reasonable expectation of privacy in the place searched.

The United States Supreme Court took note of Lisk in United States v. Salvucci, 448 U.S. 83 (1980). The Supreme Court observed that:

> Legal possession of the seized good may be sufficient in some circumstances to entitle a defendant to seek the return of the seized property if the seizure, as opposed to the search, was illegal.

Id. at 91 n.6. Although the Salvucci Court declined to explore the issue further because respondents did not challenge the constitutionality of the seizure of the evidence, the Justices left a clear path for other courts to follow.

-13-

In light of <u>Lisk</u> and <u>Salvucci</u>, one legal scholar offered this scenario:

> [I]f I hide my gun in a neighbor's house without his consent and the police searched his house illegally, I should be able to challenge the seizure of the gun but not the search of the house, because I had no right of privacy in the house.  If, on the other hand, my neighbor consented to hide my gun in his house, I would then have a right of privacy and could contest a search which resulted in the seizure of my gun.

William A. Knox, <u>Some Thoughts on the Scope of the Fourth Amendment and Standing to Challenge Searches and Seizures</u>, 40 Mo. L. Rev. 1, 52 (1975), <u>quoted in</u> 6 Wayne R. LaFave, <u>Search and Seizure: A Treatise on the Fourth Amendment</u> § 11.3(c)(4th ed. 2004).  Because the facts of this case bear a closer resemblance to those of the former scenario than to the latter, this Court finds that Defendant does have standing to challenge the legality of the seizure of his gun and ammunition.[1]

Interestingly, Defendant has not specifically challenged the seizure of his gun and ammunition, instead choosing to devote his substantive argument to the illegality of the search of Pringle's apartment.  Nevertheless, the requisite threshold is a particularly high one.  When a defendant has standing only to object to the seizure, then "the case is the same as though the [goods] had been found in plain view in a public place and then

---

[1] This Court takes no position on the legality of the search of Pringle's apartment because that issue is disposed of on the question of standing.

seized". <u>Lisk</u>, 522 F.2d at 230. If the seized item was contraband or the product of criminal activity, it was clearly subject to seizure. <u>Id.</u> at 230-31. Specifically, the defendant may only contend that the police lacked grounds to believe that the items were connected with criminal activity or some other lawful basis for seizure.

Although Defendant has made no argument with respect to the legality of the seizure of his gun and ammunition, the facts of the case make the conclusion obvious. Where a third party consents to a search and the police find incriminating evidence against another party in the course of that search, the police are clearly permitted to seize the incriminating evidence. <u>Frazier</u> v. <u>Cupp</u>, 394 U.S. 731, 740 (1969). In this case, Pringle directed the police to search her bureau drawer and Battle's gun was found. The seizure of that gun and ammunition by the police was not illegal and the evidence will not be suppressed.

**ORDER**

In accordance with the foregoing, Defendant's Motion to Suppress Evidence and Statements (Docket No. 22) is **DENIED**.  The government's Motion to Schedule a Hearing or Status Conference Regarding Defendant's Motion to Suppress and For an Order on Excludable Delay (Docket No. 33) is **DENIED** as moot.

**So ordered.**

```
                              /s/ Nathaniel M. Gorton
                             Nathaniel M. Gorton
                             United States District Judge
Dated October 20, 2005
```