UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

UNITED STATES OF AMERICA

vs.                                                                          Docket No. 05-cr-10053-NMG

TYRONE BATTLE

### DEFENDANT'S SENTENCING MEMORANDUM

Defendant Tyrone Battle respectfully moves that this Court impose a sentence that is below or "in variance" with the advisory guideline range. As grounds therefore, defendant states that his personal history and the circumstances of this offense warrant a sentence of 48 months imprisonment.

In the instant case, Tyrone Battle was charged in a one-count indictment with possession of a firearm after having been previously convicted of a felony, in violation of 18 U.S.C. §922(g)(1).[1] On May 9, 2006, Mr. Battle pleaded guilty to the felon in possession charge. There was no plea agreement in the case. Sentencing is currently scheduled for September 20, 2006.

The U.S. Probation Office has prepared a Pre-Sentence Report ("PSR") in this case and found that the total offense level is 19. PSR ¶ 35. Probation has also determined that Mr. Battle's criminal history category is VI. PSR ¶ 47. The advisory sentencing range is 63 to 78 months. PSR ¶ 110.

---

[1] Mr. Battle was arrested on December 20, 2004, and charged in state court (Roxbury District Court docket number 0407CR5702). Soon after, the case was taken over by federal authorities resulting in a federal criminal complaint being issued on February 18, 2005, on which Mr. Battle was taken into federal custody after the state charges were dismissed. The federal indictment was returned and filed on March 9, 2005.

1

**I.     INTRODUCTION**

Defendant submits this memorandum in order to assist the Court in fashioning the most appropriate sentence by addressing each of the available sentencing options under the provisions of 18 U.S.C. §3553(a), as now constitutionally required by the Supreme Court in light of United States v. Booker, 543 U.S. 220, 125 S.Ct. 738, 160 L.Ed.2d 621 (2005).  This memorandum will supplement the Presentence Report ("PSR") and submit reasons why this Court should consider and grant a sentence that is below or "in variance" with the advisory Guideline level based on various factors in mitigation.

Section 3553(a) requires this Court to consider a number of factors in imposing sentences.  *See* United States v. Pho, 433 F.3d 53, 61-62 (1st Cir. 2006), including "the nature and circumstances of the offense and the history and characteristics of the defendant," 18 U.S.C. § 3553(a)(1), "the need for the sentence imposed," *id*. §3553(a)(2), and "the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct," *id*. §3553(a)(6).  The statute also requires this Court to consider the sentencing range established by the now advisory sentencing guidelines.  *Id*. §3553(a)(4).

In United States v. Jiménez-Beltre, 440 F.3d 514 (1st Cir. 2006) (en banc), the First Circuit stated that the Guidelines remained "an important consideration" because they represented the only "integration of the multiple factors" identified in the statute, often reflected past practice, and bore the imprimatur of the expert agency charged with developing them." *Id*. at 518 (emphasis omitted).  However, in a subsequent case, the First Circuit noted, the fact that "a factor is discouraged or forbidden under the guidelines

does not automatically make it irrelevant when a court is weighing the statutory factors apart from the guidelines." United States v. Smith, 445 F.3d 1, 5 (1st Cir. 2006).

## II.     GUIDELINE CALCULATION

Under Guideline calculations, should this Court find that Mr. Battle's Total Offense Level is 19 and his Criminal History Category is VI, the Guideline imprisonment range is 63 to 78 months, as stated in the PSR. The defendant requests that the court adopt the recommendation of the probation department and the Government of a reduction of three points for acceptance of responsibility.

## III.    FACTORS IN MITIGATION

As an alternative to the above Guideline calculation, Mr. Battle respectfully submits that this Honorable Court could take into consideration the following additional 18 U.S.C. §3553(a) factors in mitigation that may be seen as alternatively, grounds for departure, or reasons for a variance with the Guidelines. Defendant has used the language of departures in discussing mitigating factors, in part because Booker did not change the fact that a district court may sentence below the Guidelines on the traditional grounds of departure, and in part because the First Circuit has held that the Guidelines continue to be an important consideration in sentencing. Jiménez-Beltre, 440 F.3d at 518.[2] However, defendant notes that all of the factors listed below constitute reasons for

---

[2] *But see* United States v. Navedo-Concepcion, 450 F.3d 54 (60 (1st Cir. 2006) (Torruella, J., dissenting) ("I am concerned that we are … regressing to the same sentencing posture we assumed before the Supreme Court decided Booker…. [I do not] believe that this is what the Supreme Court had in mind when it struck down the mandatory guidelines regime.").

granting a variance from the Guidelines, whether or not they would have qualified as grounds for a downward departure prior to Booker.

## The history and characteristics of Tyrone Battle

Tyrone Battle is a twenty-five-year-old man who was raised in Boston, Massachusetts in ever-changing living environments, under poor economic conditions. He was abandoned by his father before his mother had even carried him to term. Tyrone's father, Phillip Hankerson, died of a heroin overdose in 1992. PSR ¶ 72. At some point shortly after his birth, his mother, Michelle Darby, became involved with and married a man named Michael Patterson. PSR ¶ 54. Mr. Patterson was an alcoholic who physically abused Tyrone's mother in his presence. PSR ¶ 55. One of the more egregious episodes involved Mr. Patterson punching the pregnant Michelle Darby in the face and pushing her down the stairs. PSR ¶ 55. This abusive relationship, though episodic, spanned twelve years. Mr. Battle's upbringing in this environment clearly affected his development.

When he was twelve, Mr. Battle's mother began abusing drugs. PSR ¶ 56. This addiction problem has plagued her to this very day. PSR ¶¶ 70, 88. The beginning of her addiction marked the start of her physical abuse of Tyrone, after she learned that he had told a teacher at school about her drug use. PSR ¶ 56. Eventually DSS intervened and Tyrone, at the age of twelve, was removed from his home. PSR ¶ 57. Tyrone went with his sister to live with his grandmother, Clyde Ann Nelson. PSR ¶ 57. Although she never regained custody due to repeated drug relapses, Tyrone continued to hold out hope that he would be returned to his mother. Throughout adolescence, Tyrone's hopes were raised and then dashed as his mother flirted with recovery only to relapse. PSR ¶¶ 58, 67.

4

This recurrent disappointment came to characterize Tyrone's youth, leading to difficulties in school, at home and with the courts. By the age of fourteen, he was running the streets, living on his own with other misdirected youth. PSR ¶¶ 60-61. His own abuse of marijuana exacerbated all of the problems and difficulties in his life. PSR ¶ 90. As a result of the turmoil in his life, he left school prior to graduation. PSR ¶ 93.

Without proper guidance and seeking a sense of belonging, Mr. Battle, at the age of fourteen, began a relationship with Chadena Awogboro. PSR ¶ 76. Ms. Awogboro, herself then only thirteen, was from a similarly dysfunctional environment. PSR ¶ 61. These two young people went on to have a volatile and dysfunctional relationship. During the early part of their relationship, Ms. Awogboro, at the age of fifteen, had the child of another man. PSR ¶ 76. Mr. Battle chose to stay involved hoping to help her out. Eventually they had two children of their own and the relationship took on many of the negative characteristics that had marked Tyrone's youth.

The relationship bottomed out and ended with the events that bring Mr. Battle before this court. Mr. Battle regrets his actions in this matter and has reflected a great deal on how he has reproduced the same dysfunctional environment for his children as he experienced as a child. He accepts responsibility for his actions and wishes to change.

IV.     ARGUMENT

**The Law After <u>Booker</u> and Why a Sentence a Sentence at or Above the Guideline Sentencing Range Is Not Necessary or Appropriate**

In light of <u>Booker</u>, it is no longer necessary for a case to be "atypical" or "not ordinary" in order for a sentencing judge to impose a sentence *below* the Guideline

5

sentencing range, as the sentencing range is just one factor on par with other sentencing factors.

In Booker, the Court held that the United States Sentencing Guidelines are no longer mandatory and must function as merely one factor among others set forth more generally in 18 U.S.C. § 3553(a). Although the Courts must consider the Guideline range, they also must "tailor the sentence in light of other statutory concerns, see 18 U.S.C. § 3553(a)." Booker, 125 S.Ct. at 757.

Booker reshapes sentencing *vis-à-vis* §3553(a) in at least three ways:

(1) It requires a Court to impose a sentence "sufficient ***but not greater than necessary***" (emphasis added) to comply with the several goals of sentencing –

- (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
- (B) to afford adequate deterrence to criminal conduct;
- (C) to protect the public from further crimes of the defendant; and
- (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner.

(2) In arriving at an appropriate sentence, the Court "shall" consider certain factors, including: (a) the "nature and circumstances of the offense," (18 U.S.C. §3553(a)(1)); (b) "the history and character of the defendant" (*id.* §3553(a)(1)); (c) the kinds of sentences available (*id.* §3553(a)(3)); (d) how to avoid unwarranted disparities between similarly situated defendants (*id.* §3553(a)(6)), as well as the applicable Guideline factors and policy statements (§3553(a)(4) and (5)); and (e) the need to provide for restitution to any victims (*id.* §3553(a)(7)).

(3) A sentencing court cannot uncritically apply the Guidelines and use the advisory sentencing range as presumptively correct. Jiménez-Beltre, 440 F.3d at 518. The bottom-line is that, post-Booker, the Courts are free to disagree with a Guideline

6

range and can impose a sentence that is reasonable and tied to the factors listed in §3553(a), without having to find the factors that take the case out of the "heartland" or make it "atypical."

For the reasons expressed below, and upon considering the factors under §3553(a), a sentence at or above the Guideline range is not necessary to accomplish the goals under §3553(a).

**1. Mr. Battle Was A Victim of Extraordinary Child Abuse**

Even before the Booker decision, a sentence below the applicable Guideline sentencing range by way of a downward departure was available in cases where a defendant suffered extraordinary abuse during childhood. Mr. Battle was physically abused throughout his childhood at the hands of his mother and his stepfather. He also suffered emotional abuse and witnessed the severe beatings of others. Additionally, Mr. Battle stepped in to protect his younger sister, whom he viewed as more vulnerable. The level of abuse was such that Mr. Battle is still emotionally shaken when required to talk about it.

Courts have recognized that, notwithstanding the sentencing guidelines' discouragement of departure based on a defendant's childhood history, (U.S.S.G. § 5H1.12 (policy statement)), departure may be warranted if a defendant has suffered extraordinary abuse during childhood. United States v. Pullen, 89 F.3d 368, 371 (7th Cir. 1996); United States v. Brown, 985 F.2d 478, 481 (9th Cir. 1993). Mr. Battle was born into abandonment and abuse. It was unrelenting until roughly the age of thirteen, when things were so out of control that the state removed him from the home. Mr. Battle never had a normal home life. The efforts of his grandmother were thwarted by the

7

reappearances and relapses of Tyrone's mother. An infancy spent witnessing instances of abuse, which evolved into a general environment of abuse, and eventually descended into his protector becoming an addict and abuser, places Mr. Battle's experience in the extraordinary category. To say otherwise would make the perverse statement that such abuse and abandonment is normal. If the Court fails to grant a departure on these grounds, the Sentencing Commission's decision to exclude factors such as socio-economic status or difficult childhood is no longer binding. It is reasonable to lower Mr. Battle's sentence based upon his youthful exposure to an abusive environment.

**2. Mr. Battle Was The Victim Of A Violent Crime and a Witness to A Murder**

When he was eighteen, Mr. Battle was shot in his left thigh during an unprovoked attack by an assailant who apparently intended to rob him. PSR ¶ 84. Clearly, being the victim of a shooting, after years of abuse as a child, is an unusual circumstance not contemplated by the Guidelines. Mr. Battle's reaction to being shot is indicative of the abnormal circumstances regarding his exposure to abuse: he never sought medical treatment for the injury because he felt it was only a "flesh wound." PSR ¶ 84.

In United States v. Rivera, 994 F.2d 942 (1993), the First Circuit noted that the Sentencing Commission,

> has explicitly stated that (with a few exceptions) it did not "adequately" take unusual cases "into consideration." Of course, deciding whether a case is "unusual" will sometimes prove a difficult matter (in respect to which particular facts, general experience, the Guidelines themselves, related statutes, and the general objectives of sentencing al may be relevant). But, once the court ... has properly determined that a case is, indeed, "unusual," the case becomes a candidate for departure....

Rivera, 994 F.2d at 947.

He was further traumatized in 2004, when his best friend, Donnell Witt, was shot and killed. Mr. Battle, who was within two feet of Mr. Witt when the gunfire commenced, stayed by his friend's dead body

8

comforting the deceased's mother. After leaving the scene, Mr. Battle stayed inside for two weeks, fearful that Mr. Witt's assailants would target him as a witness. This fear and trauma caused him to miss the funeral of his closest friend. Mr. Battle has suffered the dual traumas of being the bystander to a friend's murder and he has been subjected to the actual trauma of being shot. These are substantial grounds to sentence below the guidelines.

### 3. Mr. Battle's Diminished Capacity

A sentencing court may reduce or eliminate an incarcerative sentence under the federal sentencing guidelines upon a finding "that there exists … [a] mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." 18 U.S.C. § 3553(b); U.S.S.G. § 5K2.0. Following the decision of the First Circuit in United States v. Rivera, 994 F.2d 942, 947 (1st Cir. 1993), the trial court has broad authority to depart from the guideline range where "the given circumstances, as seen from the district court's unique vantage point, are … unusual … or not ordinary…." Id. at 951. See also Koon v. United States, 518 U.S. 81, 92-98, 116 S. Ct. 2035, 2044-2046, 135 L.Ed.2d 392 (1996).

The Guidelines allow for a downward departure due to the diminished capacity of the defendant. Mr. Battle suffers from post-traumatic stress disorder (PTSD). This condition clearly and significantly diminishes Mr. Battle's ability to function. The guidelines' approach to taking into account a defendant's diminished capacity in sentencing began with the Sentencing Reform Act, in which Congress directed the Commission to consider the relevance of certain offender characteristics, including a defendant's "mental and emotional condition to the extent that such condition mitigates the defendant's culpability." 28 U.S.C. § 944(d)(4) (1994). The Commission followed

9

through on this direction in its preliminary draft of the sentencing guidelines, noting that a "mitigating factor might be the presence of a serious mental disability that did not rise to the level of a successful defense." Preliminary Draft of Sentencing Guidelines for United States Courts, 51 Fed. Reg. 35,080, 35,131 (Oct. 1, 1986). A year later, the Commission noted in its proposed guidelines that an offense level could be decreased for "Diminished Capacity" if "the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, … provided that the defendant's criminal history does not indicate a need for incarceration to protect the public." Proposed Sentencing Guidelines for Untied States Courts, 52 Fed. Reg. 3920, 3970 § Y218 (Feb. 6, 1987).

The concept of diminished capacity was eventually codified and placed in Chapter 5, Part K (Departures) of the Guidelines. The Commission identified a defendant's reduced mental capacity as one circumstance in which a departure would be encouraged, noting that such an impairment would normally constitute grounds for departure. *See* U.S.S.G. § 5K2.13; U.S.S.G. ch. 1, Pt. A(b), Departures. The original version of the Diminished Capacity departure read as follows:

> If the defendant committed a non-violent offense while suffering from significantly reduced mental capacity not resulting from voluntary use of drugs or other intoxicants, a lower sentence may be warranted to reflect the extent to which reduced mental capacity contributed to the commission of the offense, provided that the defendant's criminal history does not indicate a need for incarceration to protect the public.

§ 5K2.13 (1987). Thereupon followed much litigation over the proper interpretation of the phrase "non-violent offense." *See, e.g.*, United States v. Nunez-Rodriguez, 92 F.3d 14, 24-25 (1st Cir. 1996); United States v. Weddle, 30 F.3d 532, 537-40 (4th Cir. 1994); United States v. Cantu, 12 F.3d 1506, 1513 (9th

10

Cir. 1993); United States v. Poss, 926 F.2d 588, 591 (7th Cir.) (*en banc*), cert. denied, 502 U.S. 827, 112 S.Ct. 96, 116 L.Ed.2d 67 (1991); United States v. Russell, 917 F.2d 512, 517 (11th Cir. 1990), cert. denied, 499 U.S. 953, 111 S.Ct. 1427, 113 L.Ed.2d 479 (1991); United States v. Askari, 140 F.3d 536 (3d Cir. 1998) (*en banc*); United States v. Maddalena, 893 F.2d 815, 819 (6th Cir. 1989), cert. denied 502 U.S. 882, 112 S.Ct. 233, 116 L.Ed.2d 190 (1991); United States v. Chatman, 986 F.2d 1446, 1451-52 (D.C. Cir. 1993).

Consequently, effective November 1, 1998, the Sentencing Commission amended the section, providing the language that exists today:

> A sentence below the applicable guideline range may be warranted if the defendant committed the offense while suffering from a significantly reduced mental capacity. However, the court may not depart below the applicable guideline range if (1) the significantly reduced mental capacity was caused by the voluntary use of drugs or other intoxicants; (2) the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence; or (3) the defendant's criminal history indicates a need to incarcerate the defendant to protect the public. If a departure is warranted, the extent of the departure should reflect the extent to which the reduced mental capacity contributed to the commission of the offense.

The application note for this section illustrates that the departure is intended to address both cognitive and volitional impairments, stating that a "significantly reduced mental capacity" means "the defendant, although convicted, has a significantly impaired ability to (A) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (B) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, commentary, n.1. The defendant requests that he be given a departure under § 5K2.13 on the basis of his diminished capacity.

**4. Mr. Battle's Extraordinary Mental and Emotional Condition**

Should this Court disagree with defendant and hold that it cannot grant a departure under § 5K2.13, Mr. Battle submits that § 5H1.3 allows the Court to grant a departure on the basis of his mental or emotional condition. Ordinarily § 5H1.3 would not be an available departure for a defendant, because § 5K2.13 encompasses the issue of a defendant's mental condition. However, in an extraordinary case, a mental or emotional condition may warrant a lighter sentence even if it does not fit the express exception in § 5K2.13, the diminished capacity departure. U.S.S.G. § 5H1.3 (policy statement) provides:

> Mental and emotional conditions are not ordinarily relevant in determining whether a sentence should be outside the applicable guideline range, except as provided in Chapter Five, Part K, Subpart 2 (Other Grounds for Departure).

"Both U.S.S.G. §§ 5K2.0 and 5K2.13 satisfy that requirement." United States v. Hines, 26 F.3d 1469, 1478 n.6 (9th Cir. 1994) (emphasis in original), cited in United States v. Carvell, 74 F.3d 8, 12 n.5 (1st Cir. 1996) (district court had authority to depart based on defendant's mental health condition under § 5K2.11, the "lesser harms" provision). §§ 5K2.0 and 5K2.13 set forth two distinct bases for downward departure where a defendant suffers from an impaired mental or emotional condition. As such, this Court has authority to depart downward under § 5H1.3 and § 5K2.0 based on Mr. Battle's extraordinary mental and emotional condition, even though he may not satisfy the requirements of § 5K2.13.

§ 5H1.3 allows the court to consider a defendant's mental and emotional conditions, if it determines it to be an extraordinary case. §5K2.0, in turn, authorizes a district court to depart from the applicable guideline range if the court finds "that there

exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described."

The decision as to what extraordinary circumstances render mental and emotional conditions relevant under the Guidelines is fact-bound. United States v. Shore, 143 F.Supp.2d 74, 79 (D. Mass. 2001). From an early age he witnessed his mother using drugs and his step-father abusing alcohol. He witnessed his step-father physically abusing his mother, and suffered physical abuse himself. At the age of 13 he began running away, and when not in state custody or foster care, he was lived on the streets. Mr. Battle's resultant mental and emotional condition is outside the norm, and this Court should take it into consideration in its sentencing decision. The fact that Mr. Battle has intellectual deficiencies, depression and post-traumatic stress disorder all contributed to his actions in this case.

5. **The nature and circumstances of the offense do not make it particularly serious**

Although the nature of the offense herein may be characterized as serious as it is a felony, it is not as serious as many other felonies provided for under federal law. "[B]eing a felon in possession is a serious yet still modest crime…." United States v. Sanders, 197 F.3d 568, 572 (1st Cir. 1999). In fact, it is labeled a "Class C" felony, below Class A and B felonies, which pertain to the most serious of felonies  See 18 U.S.C. §3581(b). Moreover, the facts of this case distinguish this case from many cases prosecuted under 18 U.S.C. §922(g)(1): the gun possessed was missing parts and was not operable; the state court dismissed the charges that were connected with the possession charge, and they were not brought in federal court; and the alleged victim, Ms.

13

Awogboro, refused to cooperate with authorities in pressing charges, and informed federal investigators that the argument with Mr. Battle was "no big deal" and that the Boston Police had blown it out of proportion.

**6. Disparity between federal and state sentences**

The defendant, who was initially charged in the state court, could not have been convicted of a firearms charge in that jurisdiction. The gun in this case was missing several parts, and thus did not fit the definition of a firearm under the laws of Massachusetts because it was not capable of discharging a shot or bullet. *See* M.G.L. ch. 140, § 121. Furthermore, Ms. Awogboro was not cooperating with the prosecutor's office. There is, therefore, every reason to believe that these charges would have been successfully defended in the state court. Lastly, Mr. Battle had been offered a one-year sentence prior to the case being removed to the federal court. On the advice of counsel, Mr. Battle declined the offer. Hindsight, of court, is twenty-twenty, and Mr. Battle does not mean to impugn the advice of his zealous state attorney. Nevertheless, the fact that he faces a sentence five times greater than that which he faced in state court is too high a price.

Accordingly, the Court should sentence below the guidelines range in order to account for this unreasonable gap in sentencing. *See* United States v. Wilkerson, 411 F.3d 1 (1st Cir. 2005) (where district judge "repeatedly expressed his concern about disparate treatment between federal and state court sentences in similar cases, but stated that the Guidelines did not permit him to take that disparity into account...," case remanded for resentencing in part because under Booker, "the need to avoid unwarranted

14

sentencing disparities" is among the factors to be considered by the now advisory Guidelines).

### 7. The Defendant Has Experienced Hardship Based on Substandard Conditions of Pretrial Confinement

The Defendant seeks a variance due to substandard conditions of pretrial confinement, the case law supports such a motion. In United States v. Hernandez-Santiago, 92 F.3d 97 (2d Cir. 1996), the trial court department departed downward, in the sentencing of a defendant convicted of dealing crack and possessing a firearm, because of harsh pretrial confinement. According to the Second Circuit, the trial court "decided to depart downward three levels because the defendant had been incarcerated for 22 months – since the day of his arrest in September 1993 to the time of sentencing – in a state facility, in the district court's view a 'harsher incarceration' than federal imprisonment because of its lack of educational and therapeutic programs." *Id*. at 101, n.2. The government did not contest the basis of this downward departure on appeal.

Mr. Battle has been held from the day of his arrest to the present. He has been held at the Suffolk County Jail and the Plymouth County Correctional Facility ("Plymouth"). The pretrial detention conditions at Plymouth are clearly substandard, offering "harsher incarceration" than federal imprisonment. According to Mr. Battle, pretrial detainees are excluded from all academic and programmatic activities at Plymouth. There is no yard at Plymouth and so all inmates are restricted to the interior of the building. In terms of visitation, no contact visits are allowed. State pretrial detainees at the same facility are allowed programmatic and academic activities. Mr. Battle has been denied the ability to obtain his GED, and he is not allowed to attend AA or NA

15

meetings. As a result, he is unable to show the court his hopes and abilities for rehabilitation, which in itself would be a grounds for a sentence below the guidelines.

In contrast to the conditions at Plymouth, inmates in federal facilities enjoy substantially more privileges and freedoms. Federal inmates generally receive a *minimum* of four hours of visitation each week. ("Each Warden shall establish visiting hours at the institution on Saturdays, Sundays, and holidays. The restriction of visiting to these days may be a hardship for some families and arrangements for other suitable hours shall be made to the extent practicable. Where staff resources permit, the Warden may establish evening visitation hours." BOP Program Statement, 5267.06 at 540.43). Contact visits are standard. ("Staff shall permit limited physical contact, such as handshaking, embracing and kissing, between an inmate and visitor, unless there is clear and convincing evidence that such contact would jeopardize the safety ... of the institution." Id. at 540.51(g)(2)). Furthermore, BOP encourages the "constructive use of leisure time and offers movies, games, sports, social activities, arts and hobbycrafts, wellness and other group and individual activities." BOP Program Statement 5370.08 at 544.30. BOP also offers numerous educational and therapeutic programs as well as extensive vocational training. *See* BOP Program Statements 5300.17 and 5300.18.

Unfortunately, Mr. Battle has been denied these opportunities. Therefore, based on the nature of his pretrial confinement, a sentence below the guideline range is both appropriate and warranted on this basis.

### 8. The Aggregation of the Above-Referenced Factors

A downward departure or variance may be granted based on an aggregation of factors each of which may individually be insufficient to justify a departure or variance. In the case of Mr. Battle, the cumulative factors are his tragic personal history and loss of

16

loved ones (*see* United States v. Lopez, 938 F.2d 1293, 1297-99 (D.C.Cir. 1991) (district court to consider departure because defendant exposed to domestic violence, the murder of his mother by his step-father, his need to leave town because of threats, and his growing up in disadvantaged neighborhoods)); and his lack of personal guidance as a youth (*see* United States v. Floyd, 945 F.2d 1096 (9th Cir. 1991) (fifty percent downward departure from guideline range appropriate because of defendant's abandonment by his parents and lack of guidance as a youth)).  These factors individually are sufficient grounds for a downward departure.  However, should the Court disagree with that analysis, defendant is asking that they be aggregated and together form the basis for departure.

The guidelines explicitly acknowledge that a combination or aggregation of factors could distinguish a case from the "heartland."  This possibility has been addressed in the comments to the guidelines, and has been supported by the Sixth Circuit sitting *en banc* in United States v. Coleman, 188 F.3d 354 (6th Cir. 1999).  The comment to U.S.S.G. § 5K2.0 recognizes:

> The possibility of an extraordinary case that, because of a combination of such characteristics or circumstances [not ordinarily relevant to a departure], differs significantly from the "heartland" cases covered by the guidelines in a way that is important to the statutory purposes of sentencing, even though none of the characteristics or circumstances individually distinguishes the case.  However, the Commission believes that such cases will be extremely rare.

U.S.S.G. § 5K2.0, Commentary.

This court should similarly consider whether Mr. Battle's case has sufficient extraordinary factors to take it out of the heartland of similar cases.  The facts and circumstances of this case provide solid reasons for the Court to impose such a sentence. Tragically, two things set Mr. Battle back in his life:  drug abuse and the self-destructive behaviors that are the outgrowth of a troubled childhood.  Mr. Battle knows that he needs

17

to address his drug problem, as well as his history of abuse.  He is anxious and willing to do that while incarcerated and with the probation department after his release.  The building of self-esteem to avoid the return of self destructive behaviors is hard to start in prison. A shorter sentence would allow Mr. Battle to begin this process sooner.

At the time of his arrest and before this court, Mr. Battle has accepted responsibility and acknowledged his wrongdoing.  These are all signs of a man who has learned a lesson and wishes to change. We urge this court to impose a sentence of 48 months so that Mr. Battle can return to the community, find employment and begin to again meet his obligations to his children, his family and to himself.

**CONCLUSION**

Therefore, the defendant respectfully requests this Honorable Court fashion a sentence "sufficient but not greater than necessary," as provided for in 18 U.S.C. § 3553(a). Appropriate sentencing would include a term of no more than 48 months, no fine due to his present lack of resources and a recommendation to the Bureau of Prisons to be incarcerated in a facility where his family may visit him.

Respectfully submitted,
TYRONE BATTLE
By his attorney,


/s/ MARK W. SHEA                              Dated:  September 14, 2006
Mark W. Shea
BBO No. 558319
47 Third Street, Suite 201
Cambridge MA  02141-1265
617.577.8722          telephone
617.577.7897          facsimile
mwshea@slrw.net


**Certificate of Service**

I hereby certify that this document filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non registered participants on September 14, 2006.

/s/ Mark W. Shea
MARK W. SHEA